MABRY *v.* KETTERING.

Opinion delivered March 8, 1909.

INJUNCTION—USE OF PHOTOGRAPH OF ACCUSED.—On a preliminary hearing the court will not restrain officers charged with the enforcement of the criminal laws from developing photographs of persons accused of crime for the purpose of identifying them.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; temporary injunction dissolved.

*Bradshaw, Rhoton & Helm,* for appellants.

*Wm. G. Whipple* and *Powell Clayton,* for appellees.

PER CURIAM. Appellants, J. C. Mabry, F. M. Clark, J. S. Johnson and I. J. Warner, instituted this suit in the chancery court of Pulaski County against appellees, Kettering, Reynolds and Swenson, praying for an injunction restraining the latter from developing plates of the photographs of appellants and using the same. They allege in their complaint that they are confined in the Pulaski County jail, being held there on criminal charges; that appellees had, over the protest of appellants, made photographic plates of each of them for the purpose of developing same into photographs and publishing same in what is known as the "Rogue's Gallery," and for the further purpose of publishing them broadcast in various journals and newspapers in the United States. They allege that they have never been convicted, and are not guilty of any criminal offense, and that said use of the photographs will result in irreparable injury to them.

In an amendment to the complaint it is alleged that the photographic plates were taken with the consent of appellants, but under an express agreement that the plates would be held and not developed or made use of in any way until appellants had an opportunity to test in the courts of the State the legal right of appellees to use the photographs. The prayer of the

complaint is that "upon final hearing of this cause for a permanent injunction, enjoining and restraining said defendants and each of them from developing or causing or permitting to be developed photographs from said plates, and from publishing or uttering, or causing to be uttered or published, said photographs or any photographs of these plaintiffs."

The chancellor granted a temporary restraining order in accordance with the prayer of the complaint; but on a later date the chancery court sustained a demurrer to the complaint and dismissed same for want of equity. Appellants brought the case here by appeal, and obtained from one of the judges of this court an order reinstating the temporary injunction until the further orders of this court.

Appellees now move the court to dissolve the injunction.

The complaint, when it comes to be considered by this court on final hearing of the cause, will present an interesting question concerning what is now termed by modern authorities the right of privacy, or the right of an individual to invoke the jurisdiction of a chancery court to restrain an improper use of his photograph without his consent. At the present time we deem it unnecessary to go into this question; but the following cases may be examined with profit, and we commend same to the student who seeks light on this interesting subject: *Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538; *Atkinson* v. *Doherty,* 121 Mich. 372; *Schuyler* v. *Curtis,* 147 N. Y. 434; *Pavesich* v. *New England Life Ins. Co.,* 122 Ga. 190, 2 Am. & Eng. Ann. Cas. 561.

On the application for temporary injunction in aid of the appellate jurisdiction of this court, and, on motion to dissolve same, we are permitted to exercise a discretion whether or not the temporary injunction should be issued. It appears that appellees Reynolds and Swenson, for whom Kettering made the photographs, are officers of the Federal Government, and that the arrests of appellants were made at their instance. They appear here by counsel and state that the charges against appellants for violation of Federal criminal statutes are made in various localities throughout the United States, and that the photographs are desired solely for the purpose of identifying appellants in the various localities where the offenses are charged

to have been committed. They disclaim any purpose to use the photographs except for the identification of appellants. Therefore, on this preliminary hearing, the question presented narrows to the sole one whether we should restrain the Federal officers from causing the photographer to develop the photographic plates and from using the photographs for the purpose when so developed. Neither is the question presented whether or not the officers in charge of the prisoners should be restrained from compelling them to submit to having their photographs taken. The appellants have already been exposed to the camera, and the plates are ready to be developed.

The authorities cited by appellants in support of their claim for a temporary injunction clearly recognize the principle that public officers charged with the enforcement of criminal laws, and having in their custody individuals charged with crime, may use photographs for the purpose of identifying the individual accused. *Schulman* v. *Whitaker,* 117 La. 704, 8 Am. & Eng. Ann. Cas. 1174; *Owen* v. *Partridge,* 82 N. Y. Supp. 248; *State* v. *Clausmeier,* 154 Ind. 599. See also *Molineux* v. *Collins,* 177 N. Y. 395; *Shaffer* v. *United States,* 24 App. D. C. 417.

On the final hearing of the cause the other questions, as to the right of privacy, and as to the right of appellants to invoke the aid of a court of equity to restrain appellees from any use of the photographs, the consideration will be confined to the allegations of the complaint, and will extend to all questions raised therein. But, on the showing made now, the court is unwilling to restrain the appellees from the use of the photographs for the only purpose for which they are attempting to use them now. The temporary restraining order will therefore be dissolved, and it is so ordered.