THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ANGELO CERCIELLO, PLAINTIFF IN ERROR.

Submitted April 25, 1914—Decided June 15, 1914.

1. Where a defendant was convicted of killing his wife upon the testimony of a fellow prisoner in the jail, as well as upon circumstantial evidence in harmony with such admissions, the conviction will not be set aside because the trial court allowed a magnifying glass to be put in evidence and taken to the jury room, where such glass had been used upon the trial by experts to discover blood stains upon defendant's garments.
2. It was not error to allow testimony by experts concerning finger prints obtained from the defendant voluntarily, and used as a method of comparison with finger prints upon a hatchet found near the body of the deceased, when the body was discovered.

On error to the Essex Oyer and Terminer.

For the state, *Louis Hood* and *Wilbur A. Mott.*

For the defendant, *Frank P. McDermott.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff in error was tried and convicted in the Essex Oyer and Terminer of murder in the first degree. The deceased, Elvira Cerciello, was his wife, nineteen or twenty years of age.

The writ of error in the case brings up a strict bill of exceptions and the entire record of the proceedings had upon the trial.

On May 30th, 1913, in the morning, about half-past six, while on his way to work, a witness saw the body of a woman lying flat on her face, near the path just through the edge of the woods. He stopped about twelve feet from the body, and then went to the stable where he worked and told another man what he had seen. The body was lying three or four hundred yards from Grove street, and quite a distance from Bloomfield avenue. A telephone message was sent to the chief of police of Bloomfield, who arrived at the scene of the · homicide between half-past seven and eight o'clock.

It was also testified that there were foot prints at that point for a distance of about ten or fifteen feet in circumference, and that there was a pool of blood under the neck of deceased where she laid. It was also shown that a comb and some hair, and a handkerchief were found there.

There was proof of the finding in close proximity to the body a hatchet, covered with blood, in whose niches was human hair of the color and texture of the hair of the deceased.

It was also in evidence that the defendant on the night of the homicide wore a sweater from which when it was found there was one button missing. A button corresponding to those on the sweater was found about twenty-five feet from where the body was found. From admissions made by the defendant to prisoners in the jail, it was clearly inferable, if the jury credited their testimony, that the de-

fendant alone on the night in question induced his wife to go to the place where her body was found, and there murdered her with a hatchet.

The connecting links of this testimony and the circumstances surrounding the life of the defendant and his wife, were substantially illustrated and connected by witnesses whose testimony in no way was impeached or whose credibility was not materially affected by a searching cross-examination. The defendant attempted to prove an *alibi*.

The state by a series of circumstances endeavored to show that if the defendant possessed a motive for committing the crime, that motive was jealousy arising out of the fact that when he married the deceased, he knew she was not a pure woman; that she had a *liaison* with the son of a neighboring shoemaker, of whom he was jealous, and that he therefore possessed an innate feeling and doubt of her loyalty to himself. There was ample testimony adduced to sustain that view, presented by witnesses for the state, who detailed conversations with and admissions of the defendant, from which such state of mind might be properly inferred. One of these witnesses testified that about three weeks after his marriage, and some months prior to the homicide, the defendant said to the witness: "If she keeps good all right. If not with four strokes of a hatchet I will fix her." There was no objection entered to this testimony, but if there were it was admissible as a threat showing an existing disposition, intent or motive to commit the crime, if the exigency should present itself. 2 *Best Ev.* 776; 21 *Cyc.* 890; *Henderson* v. *State,* 70 *Ala.* 29; *State* v. *Day,* 70 *Me.* 120; *State* v. *Bradley,* 64 *Vt.* 466; *Commonwealth* v. *Holmes,* 157 *Mass.* 233.

Remoteness in time is the objection now urged, but that fact furnishes an argument for consideration by the jury in weighing the evidence, but it does not always preclude its admissibility as evidence. 21 *Cyc.* 892; *State* v. *Hoyt,* 47 *Conn.* 538; *Redd* v. *State,* 68 *Ala.* 492; *Everett* v. *State,* 62 *Ga.* 65.

A revolver was put in evidence by the state for the same

general purpose of showing a predisposition and intent to commit the deed. Landisi, one of the state's witnesses, in a conversation with the defendant, obtained this admission from him as his reason for failing to use the revolver: "If I did use a revolver they will hear the shooting—the shot—they will hear the shot." "I ask him," said Landisi, "Where did you put the revolver?" "I put the revolver in the drawers of my brother, and the bullets or the cartridges I throwed them in the water closet so the authorities they can't find anything in the store."

The objection urged to the admission of the revolver extends to a bottle found a few yards from the body of the deceased. The bottle bore the odor of whiskey. The witness Landisi testified that defendant told him, "I prepared myself with the hatchet behind my pants and big knife and bottle of whiskey, after I drank the whiskey and I beginning to strike her with the hatchet, and I went away." The connection between the revolver and the whiskey bottle and the defendant's criminal attitude regarding the deceased, and his preparation for the commission of the deed were thus sufficiently evinced and connected as to make it apparent that both the articles were properly admitted in evidence as bearing upon the defendant's state of mind and the truth of his admissions. 21 *Cyc.* 898 and cases cited; *State* v. *Hill,* 65 *N. J. L.* 627.

The defendant's contention that the testimony of one Gelsomnia Longo was immaterial and irrelevant, but nevertheless was admitted by the court upon condition that the prosecution would thereafter show its materiality by connecting it, which the state failed to do, is not substantial since while the testimony was not stricken out, it was characterized by the defendant as irrelevant and immaterial, and being such it was confessedly non-injurious to him.

Certain magnifying glasses were offered in evidence by the state, without objection by defendant. The glasses had been used by an expert on the trial to assist in detecting what was alleged to be the impression of defendant's finger prints, upon the hatchet. The history and quality of the lenses

were fully explained by the expert. They were stronger in their magnifying intensity than the ordinary magnifying spectacles which jurymen and the general public use in the affairs of every day life, and of such matters the court is presumed to take judicial notice. *Steph. Ev.* 314. In the absence of proof that the glasses might in some measure unfairly prejudice the defendant's case we are unable to perceive how their admission injured him.

The argument most strenuously pressed by counsel for the defendant, was directed to the assignment of error, which is based upon the action of the trial court, in allowing to go before the jury testimony intended by the state to present for their consideration an impression of the defendant's finger prints.

The testimony in the main was that the defendant after he had been some time in custody, was taken by two officers to the office of an expert in finger print impressions, and was there induced to sign his name upon a sheet of paper which act incidentally impressed his finger prints upon the sheet. It was contended that the action of the court in allowing the experts upon this subject to testify to their experience, in that line of work, as well as to the practical results obtained by use of their art in detecting crime, was illegal and incompetent. We do not so view it. The design of the prosecution, quite obviously, was to qualify the witnesses as experts in that particular calling, but the weight of their testimony and its importance, as evidence in the case, the court quite properly left to the jury to determine. Such is the course pursued in the case of the testimony of expert witnesses in other branches of human effort, science and progress.

Their testimony, as well as its subject-matter, involving the introduction in the case of the alleged finger prints of the defendant, for the purpose of comparing them with the finger prints upon the hatchet, presents a subject for judicial consideration, which while not entirely *res nova* in principle, is in its practical application in criminal procedure in this jurisdiction essentially novel.

In principle its admission as legal evidence is based upon the theory that the evolution in practical affairs of life, whereby the progressive and scientific tendencies of the age are manifest in every other department of human endeavor, cannot be ignored in legal procedure, but that the law in its efforts to enforce justice by demonstrating a fact in issue, will allow evidence of those scientific processes, which are the work of educated and skillful men in their various departments and apply them to the demonstration of a fact, leaving the weight and effect to be given to the effort and its results entirely to the consideration of the jury. *Steph. Dig. Ev.* 267; 2 *Best Ev.* 514.

The instances are numerous and the books replete with cases where this rule, arising and applied *ex necessitate* and based in its incipiency upon the maxim of the civil law, *Cuilibet in sua arte perito est credendum,* exhibiting one of the prominent exceptions of the general rules of evidence, has been applied in a multiform variety of cases, from the earliest era of reported common law, to elucidate and demonstrate disputed and elusive facts. *The Sussex Peerage Case,* 11 *Cl. & F.* 85; 2 *Best Ev.* 864.

Upon this theory it is that a seal engraver may be called to give his opinion whether an impression was made from an original seal or from an impression; that the opinion of an artist may be taken as to the genuineness of a picture (*Greenl. Evid.* 516); that the testimony of an expert in handwriting is recognized (*West* v. *State,* 22 *N. J. L.* 212); that a photographic impression of defendant may be used (*Ruloff's Case,* 45 *N. Y.* 213); that a comparison between the size and shape of a defendant's shoes and foot prints found near the scene of the murder may be introduced (*State* v. *Morris,* 84 *N. C.* 756). *Commonwealth* v. *Pope,* 103 *Mass.* 440.

This court has held that it was not erroneous to permit evidence of the coincidence between the hand of the accused, and the bloody print of a hand upon the wall of the house where the crime was committed, the hand of the accused having been placed thereon at the request of persons who

were with him at the time. Nor was it erroneous in the same case to allow testimony as to the resemblance between the spots upon the clothing produced and spots cut out of the same clothing, and used by experts in determining whether they were blood spots. *State* v. *Miller,* 71 *N. J. L.* 528.

The same case is also authority for the proposition generally conceded by the trend of judicial authority, that the condition upon which such testimony is received is that so far as the defendant is concerned he shall not have involuntarily contributed to its production, so as to cause him in legal effect to serve as a witness against his will to furnish testimony to convict himself under the rule adopted in this state as part of the common law. *State* v. *Zcadnovilz,* 69 *N. J. L.* 619.

We do not find from an inspection of the testimony here, that this legal safeguard was contravened in the case of this defendant. What he did at the time he submitted to at the request of the officers. The writing of the letter which resulted in the impression of the finger prints was in our judgment voluntary upon his part, and obviously no threats or menaces were used to force him to comply.

We are unable to discover from the case whether the finger print impression so obtained was offered in evidence, and used at the trial. But whatever the fact may be, under the circumstances, its admission would be no ground for error.

One portion only of the court's charge calls for our consideration, since as a whole we have concluded the charge presented the questions involved in a legal manner to the jury, and substantially contained all the legal questions comprehended in defendant's requests properly applicable to the case.

Referring to the testimony of Landisi, which in the main furnished the defendant's admissions of guilt, the court in charging the jury stated: "On the other hand, the jury has a right to convict on the testimony of Landisi, if in their judgment it is entirely credible and worthy of belief."

Eliminating the rest of the charge from consideration, in which was comprehended all the necessary instructions con-

cerning the defendant's right to the benefit of a reasonable doubt, and the presumption of his innocence until his guilt be proven, this excerpt might present a basis for criticism; but since the charge must be read as a whole, with a view to its impression as an entirety upon the jury (*State* v. *Zcadnovitz,* 69 *N. J. L.* 619), and since it was competent for the jury to convict upon the defendant's own confession legally made (*State* v. *Kwiatkowski,* 83 *Id.* 650), the particular direction in question must seem legally unobjectionable.

Our examination of the remaining objections urged for error leads us to conclude that they were not of such a character as to injure or prejudice the defendant in the ultimate consideration of the case by the jury, and for that reason they present no legal basis for a reversal of this conviction. *State* v. *Titus,* 49 *N. J. L.* 36.

The conviction must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   12.

*For reversal*—None.