## VERNON STACY v. STATE.

No. A-7406. Opinion Filed Sept. 27, 1930.
Rehearing Denied Nov. 15, 1930.
(292 Pac. 885.)

155

Earl A. Brown, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Carter county of burglary in the second degree, and his punishment fixed at two years in the state penitentiary.

The record discloses that at the time charged the business house of one M. M. Wallis was broken into and the vault and safe looted of about $70.   The conviction rests entirely on circumstantial evidence; this evidence in the main being proof that the finger prints of accused were found on the door of the vault.   The contention is made that this is insufficient; that a conviction based on evidence of finger prints found in the place where the crime was committed, and not corroborated by other facts or circumstances, should not be permitted to stand.

The principal witness for the state was F. E. Carson, who testified he was jailer and identification officer of Carter county; that he had been engaged in finger print work for some 21 years at Parsons, Kansas City, Kan., and at the federal penitentiary at Leavenworth, and during the World War was finger print man with the American Army at Leon and at Lyons, France. He is shown to be thoroughly qualified. He testified he made a photograph of the door of the vault and found thereon certain finger prints which were enlarged and exhibited to the jury, together with known finger prints of defendant for comparison. He also performed an experiment of pairing and identifying finger prints of other persons taken before the jury.

There are numerous books, monographs, and articles on the subject of finger prints, giving the origin, the history, and the manner of taking and preserving finger prints, and touching the reliable character of this class of evidence. 10 Ency. Brit. (11th Ed.) 376; C. Ainsworth Mitchell, Science and the Criminal 1911, p. 51; History of the Finger-Print System; Annual Report Smithsonian Institute 1912, p. 631; Scientific American April 1, 1916, p. 356; Law Notes Feb. 1, 1917; The Origin of Finger-Printing, by Sir William J. Herschel 1916, p. 11; The Finger-Print Instructor, Kuhne, p. 96; Galton on Finger-Prints 1892, p. 53. In the latter work the author says:

"We read of the dead body of Jezebel being devoured by the dogs of Jezreel, so that no man might say, 'This is Jezebel,' and that the dogs left only her skull, the palms of her hands, and the soles of her feet; but the palms of the hands and the soles of the feet are the very remains by which a corpse might be most surely identified, if impressions of them, made during life, were available. 2 Kings 9, 33; 37."

Mark Twain, in his interesting novel, Puddin Head Wilson, it will be recalled, weaves a story about the identification by finger prints of one of his characters, saying:

"These marks are his signature, his physiological autograph, so to speak; and this autograph cannot be counterfeited, nor can he disguise it or hide it away, nor can it become illegible by the wear of the mutations of time. This signature is each man's own—there is no duplicate of it among the swarming millions of the globe. Upon the haft of this dagger stands the assassin's natal autograph, written in the blood of that helpless and unoffending old man who loved you and whom you all loved. There is but one man in the whole earth whose hand can duplicate that crimson sign."

From an examination of the authorities cited and others, it appears that an allusion to finger print impressions for the purpose of identification is referred to in writings as early as 650 A. D., and they are traced back to a period some 100 years before Christ. Finger prints were first used as a manual seal to give authenticity to documents. They are found in Assyrian clay tablets of a very early date in the British Museum, and they were also used in the same way by the early Egyptians. From the literature on the subject and from the reported cases, we learn that finger prints have long been recognized as the strongest kind of circumstantial evidence and the surest form of identification. Many of the states of the Union now have laws requiring the taking of finger prints of those arrested for felony and for the preservation and exchange of such records. Chapter 127, Sess. Laws 1925. Some of the leading cases touching finger prints as evidence are Moon v. State, 22 Ariz. 418, 198 Pac. 288, 16 A. L. R. 362; People v. Jennings, 252 Ill. 534, 96 N. E. 1077, 43 L. R. A. (N. S.) 1206, notes; State v. Cerciello, 86 N. J. Law, 309, 90 A. 1112, 52 L. R. A. (N. S.) 1010;

State v. Connors, 87 N. J. Law, 419, 94 A. 812; People v. Roach, 215 N. Y. 592, 109 N. E. 618, Ann. Cas. 1917A, 410; State v. Kuhl, 42 Nev. 185, 175 Pac. 190, 3 A. L. R. 1694; People v. Sallow, 100 Misc. Rep. 447, 165 N. Y. S. 915; Hopkins v. State, 174 Ark. 391, 295 S. W. 361, 362.

We have no doubt but that the finding of the finger prints of the defendant on the door of the vault, with the further proof that defendant did not have access to and had not been at the place burglarized so that the prints could be accounted for upon any hypothesis of his innocence, is a circumstance irresistibly pointing to his guilt. In conformity to decisions of the courts in many states, we take judicial knowledge that there are no two sets of finger prints exactly alike.

It is next argued that the court committed prejudicial error in permitting the state to perform an experiment before the jury in pairing and identifying the finger prints of other persons taken in court at the time. This was done by the state to show the qualifications of the witness Carson as a finger print expert and the positive character of such evidence. The evidentiary value of abstract explanations of the methods of taking and developing finger prints and the probative force of such evidence was probably as difficult for the jury to grasp as it would be for the ordinary person who has not had occasion to become informed on the subject; that is to say, it might be difficult for a juror to believe that a metal door of a vault would reveal incriminating finger prints or that a witness would be able to say with certainty from comparing one finger print with another that they were made by the same person, or to conceive that there are no two finger prints exactly alike. Hence a demonstration illustrating to the jury the method and certainty of this evidence is admissible. Moon v. State, supra; State v. Dunn,

161 La. 532, 109 So. 56, 75; Hopkins v. State, supra. In the latter case it was said:

" 'For obvious reasons, the admission of experimental testimony must largely rest in the discretion of the trial judge, and the exercise of this discretion will not be controlled, unless it is manifestly abused.'

"See, also, the annotated case of State of Nevada v. Kuhl, 42 Nev. 185, 175 Pac. 190, 3 A. L. R. 1694, where a somewhat similar demonstration was made in the presence of the jury, and the testimony held admissible after an extensive review of the authorities.

"It has always been held competent to examine a witness who proposes to testify as an expert touching his qualifications as such. At section 62 of the chapter on Expert and Opinion Evidence in 11 R. C. L. p. 646, it is said that:

" 'He (the expert) may also be subjected to tests to determine the value of his opinion. Thus a handwriting expert has often been required to pass on other signatures submitted to him on the witness stand, though they were not relevant to the case.' "

Complaint is also made that the court erred in admitting the record of the finger prints of defendant taken at the time of his arrest on an automobile larceny charge about a month prior to the offense charged in this case. It is particularly urged that these finger prints which were used as a basis for comparison with those found on the vault door of the place burglarized contained memorandum showing the arrest of defendant for the larceny of an automobile, and that the case was pending and undisposed of. The admission of this memorandum showing the arrest of defendant for another crime was incompetent. Moon v. State, supra. No objection was made, however, to the memorandum on the car containing this finger print at the time it was offered. An objection was

160

made to the finger prints taken on the prior occasion, but none is made to the memorandum attached to it. The finger prints taken on the former occasion were admissible as a basis of comparison and identification in the same way that a contested writing may be compared with a known genuine writing.

Upon an examination of the entire record, we find no material error, and the case is therefore affirmed.

DAVENPORT and CHAPPELL, JJ., concur.