## Hornsby v. Commonwealth
### (Decided Feb. 28, 1936.)

D. M. ALLEN and R. R. CRAFT for appellant.

B. M. VINCENT, Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Dewey Hornsby, having been indicted and charged with committing the offense of storehouse breaking, was upon trial convicted and his punishment fixed at four years' confinement in the penitentiary.

The evidence introduced by the commonwealth, tending to establish the appellant's guilt of this crime, consisted of the testimony of one George Simon, who testified as an accomplice that he had known the appellant, Hornsby, for some four years before the commission of the offense here in evidence; that on September 13, 1934, he had gone, at appellant's solicitation, from Cincinnati with the appellant to Winchester, where, as appellant had planned, they that night went to the garage of Mr. R. L. David in Winchester; that Hornsby first tore open a screened window on the side of the garage, through which he saw that a car was stored therein; and that thereupon they broke the lock on the front doors, broke them open, and stole the car, a Plymouth sedan, therefrom, in which they drove away to Corbin. He further testified that Hornsby had paid him $5 for his help on the job, when he left him and returned to Cincinnati.

The evidence for the commonwealth is further, as testified by Mr. David, that upon his discovery of the theft of his car on the morning following, he at once called both the police and Mr. Coffey, a fingerprint expert, who discovered, upon inspecting the looted garage, a thumbprint and some smudges on the sill of its window that had been torn open, which he at once developed and photographed and sent to the police department at Lexington for its comparison and identification with those it had on file of known criminals. Coffey upon appellant's trial qualified as a fingerprint expert by both study in Detroit and experience covering some eight years, and, when testifying, he explained and demonstrated that his exhibited photograph of the thumbprint found upon the window sill of the garage was that of the appellant, and which was also testified by Dudley McCloy, called as a witness for the commonwealth, who qualified as a fingerprint expert and was as such connected with the Lexington police department. He stated that on December 23, 1934, he took the right hand thumbprint of the appellant, following his then arrest in Lexington for car stealing, the photograph of which he filed and exhibited in evidence to the jury, comparing and identifying it with the like thumbprint photograph taken by Coffey. He further stated that, as no two fingerprints were the same, the identity of the two thumbprint photographs

unerringly proved that the thumbprint found and photographed on the garage windowsill was that of appellant.

Both experts swear that the thumb markings of the two photographs · are identical, and conclusively show that the thumbprint found on the sill at the Winchester garage was that of the appellant, as it is the same in its markings, ridges, and "bifurcations" as that of Hornsby tken in Lexington, the photograph of which, when taken, had been signed by appellant and admitted by him to be his thumbprint.

On the other hand, the evidence given by the defendant and his witnesses, in support of his plea of not guilty, is the alibi defense—claiming that he was upon the night of September 13, 1934, not in or near Winchester, when and where it is charged and shown the David garage was broken into and his car stolen, but was, on that night, far away and happily beguiled with fox hunting in another county with Bob Sizemore and other friends, and was also, on the next day, September 14, still there at his home in Burning Springs, Clay county, Ky.

Appellant in his alibi defense was to some extent corroborated by the testimony of his companions in the fox hunt, who testified that they were accustomed to go fox hunting with Hornsby, Sizemore, and others in Clay county, at regular fixed times every month, and that they were, as well as they could remember, or according to their best recollection, with Hornsby fox hunting in Clay county on or about the night of September 13, 1934.

Also defendant, while pleading such special alibi defense as proving that he was not guilty of the crime charged, yet attempted to introduce the order book of the Clay county court, showing that he had, upon an inquest held in June, 1925, been adjudged to be a person of unsound mind and incompetent to manage his own affairs, which records the court refused to permit to be introduced, and again, after hearing the avowal that such was the character of the adjudication shown made by the order book entry as to Hornsby's then mental condition, again sustained the objection thereto, holding it incompetent upon the ground stated that:

"When a man admits he did an act, he may prove

that he was insane at the time he did the act, but when he denies that he did it, there is no defense on the ground of insanity—no testimony on that question, under the testimony of the defendant, is competent."

Upon the conclusion of the introduction of evidence, the defendant renewed his motion for a peremptory instruction, which was overruled by the court and the jury instructed that, if they believed from the evidence beyond a reasonable doubt that the defendant had willfully and feloniously broken into the garage of Mr. David with intent to steal, they would find the defendant guilty and fix his punishment as charged, and further instructed them upon the accomplice testimony heard that it would not support a conviction unless corroborated by other evidence tending to connect the defendant with the commission of the offense and that the required corroboration would not be sufficient if it merely showed that the offense was committed and the circumstances thereof.

The jury having, under these instructions, returned a verdict finding the defendant guilty, defendant filed motion and grounds for a new trial, which were overruled, and judgment entered in conformity with the jury's verdict.

The appellant, assailing this judgment, here seeks a new trial upon the grounds: (1) That the court erred in refusing to admit the introduction of the court record showing, as disclosed by the avowal made, that appellant had been in 1925 adjudged to be a person incompetent to manage his estate by reason of mental unsoundness; (2) that the court had failed to instruct the jury upon the whole law of the case, in refusing to instruct it upon the evidence sought to be introduced by appellant, tending to show, it is argued, that he had been adjudged a lunatic upon the lunacy inquest held in 1925; and (3) that the verdict was not supported by the evidence, in that the accomplice testimony was not corroborated by other evidence, as in such case required and as by the court was instructed.

We will now turn our attention to the consideration and disposition of these assignments of error.

Appellant, in support of the first assignment of error, based on the court's refusing to permit the intro-

duction in evidence of the court record showing the appellant was adjudged incompetent to manage his estate upon an inquest held in 1925 therefor, cites and relies on the case of Smedley v. Commonwealth, 138 Ky. 1, 127 S. W. 485, 129 S. W. 547. An examination of the facts and holding of that case, however, discloses so different an adjudication there made from the one here excluded as not to support appellant's contention. That the Smedley Case is so distinguished from the instant one appears by the following language of the opinion, stating the facts to which the court's ruling was addressed:

"We are further of the opinion that appellant's complaint of the exclusion by the court from the consideration of the jury of the record containing the writ, judgment, and other proceedings in the inquisition of lunacy offered in evidence by appellant to show that he had properly been found and adjudged of unsound mind shortly before his trial is well founded, for the exclusion of this evidence was error."

This language of the opinion clearly shows that Smedley had been adjudged to be insane upon a lunacy inquest held shortly before his trial, the court holding that it was error to exclude from the jury the evidence of his adjudication as such, as bearing upon the question of his guilt or responsibility for his criminal action.

The inquest and adjudication made in the instant case in 1925, which was sought to be introduced in evidence, was clearly one held and made under the provisions of section 2149, Kentucky Statutes, providing for the appointment of committees for those persons whose minds, on account of any infirmity, or weight of age, have become so imbecile or unsound as to render them incompetent to manage their estates.

The court's refusal to allow the introduction of the judgment returned upon an inquest of such character, held some nine years previous, and wherein it was adjudicated only that the appellant was incompetent to manage his estate, cannot be regarded as prejudicial to appellant's substantial rights, in view of his alibi defense here made and the fact that no claim was made that he was insane at the time of committing the crime, or at the time of his trial therefor.

The fact of appellant's being shown by this adjudication to have been at the time of his inquest, held some nine years before, a person incompetent to handle his estate, would have no substantial bearing or effect upon the question of appellant's mental condition at the time of his commission of this store breaking offense, nor tend to show that he did not then know right from wrong or have sufficient will power to govern or control his conduct and refrain from doing the criminal act.

We are therefore, while fully opproving the holding and theory of the Smedley Case, supra, of the opinion that the complained of action of the court, in here excluding the admission of evidence of a different character of adjudication from that had in the Smedley Case, was not in conflict with the rule therein announced, nor did its exclusion have the effect of prejudicing any substantial rights of appellant.

The next objection is that the court failed to instruct upon the whole law of the case, in failing to instruct the jury upon this excluded evidence as to appellant's having been adjudged to be an incompetent person to manage his estate.

Clearly this contention comes within the reason and principle discussed by us in considering the first point and should not be sustained. While the court should properly instruct upon every theory of the case advanced by the parties, which is supported by the evidence, clearly the duty of giving such an instruction extends no farther, for the court is not required to give an instruction upon a theory of the defendant which is not supported by any evidence.

Appellant's final contention is that the verdict is not here supported by the evidence, in that the accomplice testimony was not corroborated by other evidence, as required by the court's instruction.

The merit of this argument rests upon the question as to whether or not there was such other and sufficient corroborating evidence introduced by the commonwealth to support the verdict finding the defendant guilty.

To maintain this burden imposed by the court's instruction, requiring corroboration of the accomplice

testimony, the commonwealth introduced in evidence the testimony of fingerprint experts, tending to show appellant's presence at the place and the time of the breaking into of the garage and the stealing of David's car, by the photograph of the thumbprint left upon the windowsill of the looted garage, which was in every respect found upon comparison to be identical with the markings of the appellant's thumbprints later photographed and admitted by appellant to be his.

This evidence, the weight and credibility of which rested with the jury, was yet clearly corroborative of the testimony of the accomplice witness. Such character of evidence is not to be rejected upon the ground that it is opinion evidence, in view of the fact that the testimony of the expert witnesses was that by the fingerprints taken in millions of cases it has been conclusively demonstrated that the fingerprints of no two persons are exactly identical in their markings, and therefore, where two fingerprints are found to be exactly identical, it establishes the fact that they are the fingerprints of one and the same person.

The admissibility of this character of evidence, and its probative weight and credibility, is very thoroughly and learnedly discussed in Wigmore on Evidence, 1934 Supplement (2d Ed.), sec. 414, pp. 243 to 246, inclusive, and the decisions of many jurisdictions admitting fingerprint evidence are there cited with approving comment.

Among the many cases so cited and discussed is that of Stacy v. State, 49 Okl. Cr. 154, 292 P. 885, in which it was held that an accused's identity may be proved by the correspondence of fingerprints with those found at place of crime, and that such evidence is admissible to prove the crime and to connect the accused with the commission of the crime charged, though the weight and value of such evidence was a question for the jury.

Compare also People v. Jones, 112 Cal. App. 68, 296 P. 317; Hopkins v. State, 174 Ark. 391, 295 S. W. 361; State v. Steffen, 210 Iowa, 196, 230 N. W. 536, 78 A. L. R. 748; State v. Combs, 200 N. C. 671, 158 S. E. 252; State v. Smith, 128 Or. 515, 273 P. 323; Willoughby v. State, 154 Miss. 653, 122 So. 757, reported in 63 A. L. R. 1319, with extensive annotation thereto be-

ginning at page 1324; State of N. J. v. Cerciello, 86 N. J. Law, 309, 90 A. 1112, 52 L. R. A. (N. S.) 1010; People v. Roach, 215 N. Y. 592, 109 N. E. 618, Ann. Cas. 1917A, 410.

We therefore conclude that appellant's objections to the judgment, though strongly urged and argued upon the points hereinabove discussed, are not, for the reasons indicated, to be sustained.

Judgment affirmed.