N. F. WALKER, *alias* MR. WALLACE V. THE STATE.

No. 20991. Delivered May 8, 1940.
Rehearing Denied June 26, 1940.

624

The opinion states the case.

*W. C. Wofford,* of Taylor, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

From a conviction in the District Court of Williamson County on a charge of theft by false pretext, with a punishment of seven years in the penitentiary, this appeal is taken.

The appellant, under the name of Wallace, acting in conjunction with L. B. Grant, who was going by the name of Wilson, came into Williamson County and contacted Paul Andres, who was in the meat market business and who lived in the town of Walburg. The pretended purpose for which the appellant wished to engage the prosecuting witness was to assist him in getting up a block of leases for a millionaire client of his, who was then in a hotel at Bartlett. The client was temperamental and a great sport and could not be pushed in a deal, but would turn loose his money easily and a plenty of it if properly approached. His weakness was playing poker. After a considerable discussion of the matter appellant revealed these facts to the witness Andres. Andres was to engage in a social game of poker with Wilson and himself. Andres knew nothing of the game, but the appellant furnshed him the money to buy a deck of cards and taught him how to play. When the game was arranged, the appellant furnished the witness with $50.00 in money and planned that he, Wallace, (also known as N. F. Walker) should lose the fifty dollars' worth of chips which he purchased and then should take his place behind Mr. Wilson (known at home as L. B. Grant), and was to give signals to the witness which he had taught him, so that the witness would know when to bet his money. This was done truthfully for a time and the witness came into possession of several hundred dollars' worth of chips.

Finally the tragic moment—a gambler's confidence. Wilson drew only one pair. Wallace so signaled the witness. All the money went on the table. Andres wanted to call his hand because he had two pair. Wilson put up $600.00 more and nonchalantly waited for the call of Andres. Wallace insisted on the correctness of his signals. Time out was taken to raise more money. The witness understood he was using Wallace's money. To this Wallace agreed, but found himself in a helpless condition. He was away from home and could not get the money. It was a cinch. Andres went to his home town, about twelve miles away, and borrowed $1200.00. Upon returning, the chips were re-valued. The white ones were worth $100.00 each. They had $50.00 chips and $5.00 chips. The whole $1200.00 went into the purchase of the chips. The gist of the scheme was that Wallace was the banker. And what value do the chips have if the banker does not pay off? Wallace had called the correct signals so far. The $600.00 were put up to call the bet and Andres won. More than $2,600 were involved, and Andres took out seventeen white chips and put them in his pocket. Wallace signaled to Andres not to do this but Andres refused to obey. Wilson evidently did not notice it. The game proceeded. The rest of the story need not be told. Appellant, Mr. Wallace that day, falsely reported to Andres what Wilson held. Soon Wilson had all the chips in sight. The social game ended, but Andres produced his seventeen chips worth $100 a piece and demanded of the banker the money. This he refused to pay, charging that Andres had taken the chips off the bed instead of the table and that he had not won them. A dispute followed. The story ends for the day with the escape of Wallace and Wilson from the country together.

Was it an "honest" gambling game or was it a "confidence" game? If a gambling game, the appellant was wrongfully charged. If a confidence game, the result was theft by false pretext. This turns upon the intention of the parties. Intent may usually be shown by proof of similar transactions. Vaughn v. State, 134 S. W. (2d) 290, and authorities there cited; Barnett v. State, 43 S. W. (2d) 449.

Appellant did not testify, nor did he offer any proof in his behalf. Reliance is had for a reversal principally on the fact that the State offered in evidence other transactions or attempted transactions in which the appellant and his companion (Grant) had played the principal roles. The objection is that evidence of these former transactions by which other

crimes were committed were prejudicial and not admissible for the purpose of showing guilt in the instant case.

One charged with crime cannot usually be called upon to defend himself against other crimes. Proof is not admissible to show one a criminal generally in order to secure a conviction on a charge with which he is confronted. Logical as such proof may sometimes be, it is a wise provision in our law which excludes such testimony.

We have a conspicuous class of crime, however, in which the perpetrator lays the scene. He is the chief actor, and the success of it depends upon his skill in working an original plan not known generally. This is necessary to avoid suspicion. They are difficult of identification. Their intentions may be deeply hidden, but proof of their participation in other similar crimes, using the same tools and devices, are like finger prints for identification and for the purpose of disclosing the intention. Always in such circumstances other similar transactions are admissible. That the transactions found in the record in this case may be proven by the State as similar is without argument. That they are admissible is in accordance with the long line of authorities on the subject. The bills of exception complaining of these transactions are each overruled.

Finding no error in the trial of the case, it is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for a rehearing, earnestly insists that we erred in holding admissible evidence of other like offense committed by him in which he and his companion in crime resorted to the same means and methods to fleece honest and unsuspecting people of their money by means of a crooked poker game as in the instant case. While it is true that ordinarily, evidence of the commission of other extraneous offenses by the accused on trial are not admissible unless they tend to show intent, system and the general scheme of the conspirators, however, in our opinion, the evidence complained of falls within the exception to the general rule and was admissible. Appellant has brought forward nothing which was not considered by this court on the original submission. We have again reviewed the record carefully and remain of the

opinion that a proper disposition was made of this case originally.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.