SHANNON *v.* STATE.

4365                                        182 S. W. 2d 384

Opinion delivered October 2, 1944.

*Walter L. Brown,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

McHANEY, J. Appellant was charged by information on January 28, 1944, with murder in the first degree for the killing of Paul Elam on January 26. He was arrested on said charge, and, on the same day, he gave bond and was released.

On March 15, 1944, the prosecuting attorney filed a petition for an order of the circuit court to require appellant to submit to fingerprinting, alleging that through oversight, the sheriff failed to take appellant's fingerprints for identification purposes at the time he was in jail and held in custody and before he was admitted to bail; that since he was admitted to bail he had refused the request of the sheriff to take fingerprints of him for identification purposes; that he will continue so to refuse unless compelled to do so by order of court; that in case of his forfeiting his bail, it would be difficult, if not impossible, to apprehend him unless he could be identi-

fied by fingerprints; and that it is usual and customary and is a necessary practice in all cases of felony that fingerprints be taken for such purposes. An order was prayed requiring appellant to so submit. Appellant responded with a plea that such an order would be an invasion of his constitutional rights not to be forced to give evidence against himself. Art. 2, § 8, Const. Ark.; U. S. Const., amdt. 5.

On May 24, the court granted the order as prayed and directed appellant to present himself to the sheriff on or before June 10, 1944, for said purpose, to which order appellant excepted and prayed an appeal to this court which was refused. On July 20, 1944, an appeal was granted by a judge of this court.

Whether the order appealed from is a final order from which an appeal lies, we do not now decide.

The question presented for decision is, whether appellant who is charged by proper information with a felony and who has been released from actual custody on bail, may be required, before trial, to submit to being fingerprinted for identification purposes.

We have never had the exact question presented to us before. In *Mabry* v. *Kettering,* 89 Ark. 551, 117 S. W. 746, 16 Ann. Cas. 1123, it was held that: "On a preliminary hearing the court will not restrain officers charged with the enforcement of the criminal laws from developing photographs of persons accused of crime for the purpose of identifying them." Syllabus. In *Hopkins* v. *State,* 174 Ark. 391, 295 S. W. 361, it was held that finger prints and expert testimony regarding same were admissible in evidence against the accused.

We think the trial court did not commit error in making the order in question. While we have no statute authorizing or directing sheriffs and other peace officers to fingerprint persons in their custody suspected or accused of crimes, we think they have the power to do so, under the general police power, to establish identification of such persons, and that to do so is not an invasion of any constitutional or natural right of such persons.

The courts generally hold that "evidence as to correspondence of fingerprints is admissible to prove the identity of the accused." 22 C. J. S., § 616, p. 937.

An interesting case is that of *Downs* v. *Swann,* 111 Md. 53, 73 A. 653, 23 L. R. A., N. S., 739, 134 Am. St. Rep. 586. Downs was charged with embezzlement. While in custody and before trial he was photographed, measured and fingerprinted. He thereafter sought to restrain the use of same on his trial. Maryland, like Arkansas, has no statute authorizing such photographing, etc. The lower court held that the officers acted within their rights and, on appeal, the judgment was affirmed. That case is cited with approval in *United States* v. *Kelly,* 55 Fed. 2d 67, as is also our own case of *Mabry* v. *Kettering, supra.* After showing that Kelly's liberty and natural rights had not been violated and that no constitutional guaranty had been invaded by compelling him to be fingerprinted, Judge Augustus N. Hand, speaking for the Court of Appeals for the Second Circuit, in part said: "Fingerprinting seems to be no more than an extension of methods of identification long used in dealing with persons under arrest for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification." Again he said: "We find no ground in reason or authority for interfering with a method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law. . . .

"Upon the proofs submitted we find no justification for ordering the return of the fingerprints of Mortimer Kelly, and the order directing such return is accordingly reversed, with direction to the district court to dismiss the petition."

A number of other cases to the same effect are cited in the cases mentioned above and are cited in the briefs for the state.

It seems to be conceded that the sheriff had the right, while appellant was in his actual custody and before being released on bail, to take appellant's fingerprints for purposes of identification, either with or without his consent. But whether conceded or not we have no doubt of the right of the sheriff so to do. Nor do we think the fact that appellant was at large on bail deprives the sheriff of the right to fingerprint him, or the court of the power to compel him to submit himself to the sheriff for this purpose. He was in constructive custody at least, although at large on bail. We do not find any case directly so holding, but in an annotation to the case of *Moon* v. *State,* 22 Ariz. 418, 198 Pac. 288, 16 A. L. R. 262, the annotator, after stating that the constitutional provision that a defendant in a criminal case cannot be compelled to give evidence against himself is not violated by the introduction of fingerprints of the accused, uses this language: "Nor is such provision violated by an order of the court directing the taking of fingerprints of the accused as a means of identification, and their reception in evidence upon the testimony of a competent witness whose qualification as an expert is not questioned." Similar language is used in 20 Am. Jur., § 361, p. 330. To sustain this statement, the case of *People* v. *Sallow,* 100 Misc. 447, 165 N. Y. Supp. 915, is cited. This case is not exactly in point here, for there the accused had been convicted of a misdemeanor and fingerprinting was ordered to determine the punishment to be given, since the statute required greater punishment for second and third offenses.

We, therefore, hold that the court had the power and authority to make the order here in question and enforce the order by appropriate means.

Affirmed.

ROBINS, J., dissenting. I respectfully dissent from the majority opinion in this case.

We do not have in this case the question of the right of an officer to take finger prints of a person held in the officer's custody to answer a criminal charge. The only question here presented is whether the circuit court, after granting bail to a person accused of a felony, has the power to recall the defendant into custody for the purpose of permitting the sheriff to take finger prints of the accused.

When a court of competent jurisdiction makes an order granting bail to a person charged with a crime such an order is a final judgment and, if the defendant complies with the same by furnishing bail in the amount stipulated, he is entitled to his liberty and may not be recommitted, except for one of the three reasons set forth in the statute (§ 3791 of Pope's Digest), to-wit: First, failure to appear in accordance with the terms of the bail bond; second, a showing that a surety on the bail bond is dead or insufficient or has removed from the state; and third, the finding of indictment against the accused for an offense not bailable.

"An order granting bail is *res judicata* and final as to the state, and even to the accused except as to the amount, which may be reduced upon appeal or otherwise. If bail is granted after indictment found, the accused cannot be rearrested for the same offense on a new indictment and bail refused, except upon surrender by his sureties, . . . 6 Am. Jur. 85. "Where a court having the matter properly before it enters its solemn judgment and order that accused is entitled to bail, such order is *res adjudicata* on that question as to the state . . ." 8 C. J. S., § 47, p. 95.

Appellant has complied with the order of the court and has furnished proper bail. It is not claimed that he has violated the terms of his bail bond or that his bail has become insufficient by reason of the death or removal from the state of his surety. Nor is it contended that he has, since giving bail, been indicted for a non-bailable offense. Therefore, he is entitled to his liberty free from any restraint or interference by the court or any official thereof until such time as he is required to appear in

court and answer the charge that has been made against him. Ours is a government of law, not of men, and when a court or any governmental agency proceeds to interfere in any way with the personal freedom of a citizen, there should be some express provision of the law that authorizes such interference; and, if there be no such provision of law, then the proposed act of interference is illegal and a trespass upon the fundamental rights of the citizen. There is no statute, no common-law rule, no constitutional provision, which authorizes a court, after granting bail to a defendant, to recommit him to the custody of the sheriff for the purpose of having defendant's finger prints taken. No court of last resort in this country has ever approved such procedure.

I am, therefore, unwilling to agree that the circuit court has the power to make the order complained of here.

I am authorized to state that Mr. Justice McFADDIN concurs in this dissent.