**Jessie J. GAGE, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 37079.**

Court of Criminal Appeals of Texas.

Nov. 4, 1964.

Rehearing Denied Dec. 16, 1964.

No attorney of record on appeal; Richard T. Prigmore, Brownfield (on motion to reinstate appeal), for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

Evans & Egger by Samuel L. Egger, San Antonio, for appellant.

James E. Barlow, Dist. Atty., John G. Benavides and Raymond A. Wietzel, Asst. Dist. Attys., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is felony theft with a prior conviction for an offense of like nature alleged for enhancement; the punishment, 10 years.

This is a companion case to McDonald v. State, Tex.Cr.App., 385 S.W.2d 253.

The State's witness Gilmore testified that he was approached by appellant who asked for aid in locating a certain street address and who immediately displayed a large sum of money and offered to compensate Gilmore if he would drive him to a colored part of the city. On the way appellant pointed to McDonald, another colored man, standing at a bus stop and suggested that they secure his aid in locating the address. McDonald was willing to aid and proceeded with them to a spot in the colored section where Gilmore's pickup was brought to a halt. Appellant left momentarily and during his absence McDonald displayed a three card monte game indicating to Gilmore how he (Gilmore) might know the winning card. Upon appellant's return a game between appellant and McDonald got under way and appellant suggested that Gilmore select the card. The stakes grew high and McDonald was unable to claim a pot because he could not prove his ability to pay had he lost. At this juncture the net began to close and McDonald offered to divide his winnings with Gilmore if he would prove his ability to pay. This Gilmore did by withdrawing $2,000 from his bank which he was led to believe would be returned to him together with a sum for its use. Appellant claimed to be an illiterate resident of a small town in Georgia, and at the conclusion of the "game" the large sum of money, including Gilmore's $2000 was placed in an envelope supposedly addressed to Gilmore which appellant placed in a mail box. By this time Gilmore's suspicions were aroused and he waited for the mailman. Later at the post office the letter was found to contain folded envelopes but not money. Of course, by this time appellant and McDonald had vanished.

Throughout the entire enterprise McDonald and appellant pretended to be strangers and hostile to each other whereas McDonald pretended to be Gilmore's partner in the transaction.

The State fortified its case by showing that appellant was not illiterate and

was a resident of San Antonio, and we hold the evidence sufficient to support the conviction. See Walker v. State, 139 Tex.Cr. R. 623, 141 S.W.2d 618, and Porter v. State, 67 Tex.Cr.R. 578, 4 S.W. 889.

There can be no validity in appellant's contention that this prior Pennsylvania conviction was not usable for enhancement because Pennsylvania's felony statute introduced in evidence sets no minimum value on the property acquired by fraudulent means. "The Grand Inquest" upon which appellant was convicted was for having fraudulently acquired $68.00 in money and we are not therefore called upon to pass on the questions raised by appellant.

By formal bill of exception appellant contends that he was forced to give evidence against himself when the court, at the request of the State and in the absence of the jury, directed appellant over his counsel's objections to be fingerprinted in a room adjoining the courtroom on the day of his trial.

Since this is a question of first impression, in this State we are pursuaded to follow the two courts which have already passed upon this question and the expressions formed in Wigmore as shown below.

In Shannon v. State, 207 Ark. 658, 182 S.W.2d 384, the Supreme Court of Arkansas held that where an accused was charged with murder and had been arrested but through oversight was released on bail before his fingerprints were taken, the trial court did not err in entering an order requesting the accused to be fingerprinted.

In State v. La Palme, 104 N.H. 97, 179 A. 2d 284, the Supreme Court of New Hampshire held that after a finding of guilty and release on bail the defendant was still in the constructive custody of the court and could not be heard to complain of an order of the court that he be fingerprinted.

We quote from Wigmore on Evidence, McNaughten 1961 Ed., Sec. 2265, p. 386:

"If an accused person were to refuse to be removed from the jail to the courtroom for trial, claiming that he was privileged not to expose his features to the witnesses for identification, it is not difficult to conceive the judicial reception which would be given to such a claim. And yet no less a claim is the logical consequence of the argument that has been frequently offered and occasionally sanctioned in applying the privilege to proof of the bodily features of the accused."

This court has in the past demonstrated its reluctance to extend the rules announced in Beachem v. State, 144 Tex.Cr.R. 272, 162 S.W.2d 706, and Apodaca v. State, 140 Tex. Cr.R. 593, 146 S.W.2d 381, as appellant would have us do in the case at bar. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, can have no application because appellant's counsel was present at all times.

The court's timely qualifications of appellant's Bill of Exception #3 demonstrates that no injury to appellant resulted from the incident.

Finding no reversible error appearing, the judgment is affirmed.

McDONALD, Judge (dissenting).

The majority opinion erroneously construes two cases which they cite and rely upon. Judge Morrison says in the majority opinion that "we are persuaded to follow the two courts which have already passed upon this question", referring to the taking of appellant's fingerprints. In Shannon v. State, 207 Ark. 658, 182 S.W.2d 384, the Supreme Court of Arkansas, as pointed out in the opinion, was dealing with a case involving the fingerprinting of a defendant *before his trial,* while he was out on bail. Shannon had not been fingerprinted through oversight. In State v. La Palme, 104 N.H. 97, 179 A.2d 284, the defendant was ordered to be fingerprinted *after a finding of guilty* and the posting of bail.

Texas has long followed the practice or rule which recognizes the right of an officer to take a mug shot and fingerprint a prisoner immediately upon his confinement to jail. I am heartily in accord with this procedure and find no disagreement with it. However, we are not here concerned with this question and we do not, by any means, plan on limiting this right or disturbing it. This procedure is valuable to law enforcement officers in establishing the identity of inmates, disseminating this information to other officers throughout the country, and assisting in the apprehension of a criminal and identifying escapees and wanted criminals.

In the case at bar, as reflected by the bill of exception but not by the majority opinion, the appellant had already been fingerprinted by a trusty in the jail and the entire purpose of the Assistant District Attorney in moving the Court for the order to direct this appellant to submit himself to again be fingerprinted was actually to enable the state to produce a better witness than the jail trusty, as it is noted that the state's counsel told the Court in response to the Court's query about whether or not appellant had been fingerprinted when he was originally arrested, "He most likely was; but it was a trusty who could not identify the defendant and *his credibility would not be of the highest nature.*" It is clear to me from the record that the state was not initially fingerprinting a prisoner. They were using this vehicle as an avenue to accelerate the credibility of their witness by this time having a police officer who was a fingerprint expert to take the prints of the appellant under an order of the Court. This policeman expert later took the stand as a State's witness and testified fully for the state, and probably his testimony was no doubt more credible than testimony that would have been given by the jail inmate trusty who took the original prints earlier. The record reflects that these fingerprints were taken after an announcement of "Ready" on the part of both sides, after the trial had started, and they were

used in evidence not just for the purpose of identifying appellant, but they were used by the state to prove the prior conviction in the state of Pennsylvania. While this action of the trial court might not have amounted to testimonial compulsion in the literal sense, it did for all practical purposes compel appellant to give testimony against himself.

I do not think that this Court would be extending the rule in Beachem v. State, 144 Tex.Cr.R. 272, 162 S.W.2d 706, and in Apodaca v. State, 140 Tex.Cr.R. 593, 146 S.W.2d 381, by following these precedents in the case at bar. In Apodaca the defendant was compelled to walk straight lines, turn sharply, put his finger to his nose and urinate in a bottle. A police officer testified that the defendant was ordered to act. The case was reversed as being a demonstration by an act which tends to self-incrimination which is as obnoxious to the constitutional provision that one accused of crime shall not be compelled to give evidence against himself as self-incrimination by words. In the Beachem case the defendant was in jail and he was required to say certain words so that a state's witness could identify him. The witness's identification of the appellant as the robber was based upon evidence produced by appellant and was obtained, according to the opinion, in such a manner as to bring it within the constitutional provision prohibiting self-incrimination.

It is apparent to me that the appellant, Apodaca and Beachem all three were required to perform acts which incriminated them. It seems to me that the case at bar falls squarely within the rule announced in these two cases. It does not seem to me that this Court should entertain a reluctance to extend these rules announced, as Judge Morrison points out.

This Court should either follow these two cases, or it should overrule them.

The quotation from Wigmore on Evidence, cited by the majority, is not in point

and may be distinguished on its face from the facts in this case.

I respectfully dissent to the affirmance of this case.