HYDE v. STATE.

4472 206 S. W. 2d 739

Opinion delivered December 22, 1947.

*H. G. Leathers, John H. Shouse* and *Shouse & Shouse*, for appellant.

*Guy E. Williams*, Attorney General, and *Oscar E. Ellis*, Assistant Attorney General, for appellee.

SMITH, J. This appeal is from a judgment imposing the death sentence upon appellant at his trial, upon the charge of having murdered one Frank Simpson under circumstances shocking and pathetic, as stated in the brief filed by his counsel. The testimony showed a killing so deliberate and brutal that no defense except insanity was available and this was the defense interposed.

The testimony shows that appellant was enamoured of and engaged to marry Margaret, the deceased's daughter, who was employed in a moving picture theater. She reported for duty at 7 :00 p. m. and it was appellant's custom to drive her to her place .of employment. He appeared at her home for that purpose on the evening of April 28, 1947, and asked her where she had been at 3 :00 on the afternoon of the preceding day. She explained that she had been engaged in delivering some cosmetics for which she had taken orders, but the expla-

nation did not satisfy appellant, and he demanded further explanation. She saw at once that appellant was drunk and she told him that he could not take her to the theater where she worked. Appellant said he would show her and he proceeded to try to force her to enter his truck. She resisted and a struggle ensued during which Margaret's sister appeared and attempted to rescue Margaret who finally freed herself and ran into her home and hid in a closet. Appellant began searching for Margaret and announced that he would kill anyone who attempted to interfere with him. Margaret's father heard the commotion, came upon the scene and asked appellant what the trouble was, whereupon appellant shot Simpson and beat his head into a pulp with an iron bar.

It appears that appellant had sustained a serious head injury some years before, and he testified that when he drank to excess, as he had done on that occasion, he lost all control of his mental faculties and became insane. After his arrest appellant was taken to the State Hospital for observation and one of the physicians who had made a full report on his case, and who had had appellant under observation at the hospital, testified that while appellant was abnormal and psychopathic, he was not insane, and was not insane when he killed Simpson. Three other physicians, two of whom were psychiatrists, testified that appellant was not insane at the time of the trial, or at the time he killed Simpson.

Testimony was offered bearing on the question of appellant's sanity at the time of the killing, and this question was submitted to the jury under instructions, to which no exceptions were saved, and of which no complaint is now made. The verdict of the jury under these instructions reflects the finding that appellant was not insane then or at the time of the killing. His testimony at his trial gives no indication of insanity at that time.

It is assigned as error that the court erred in permitting the trial to proceed during the absence of appellant's counsel, during which absence the prosecuting attorney made an argument to which objection would have

been made, had defendant's attorney been present. This argument was to the effect that the imposition of a life sentence did not always, or usually, mean that the accused would remain in the penitentiary during the balance of his life.

The record does not show that appellant's counsel asked to be or was excused from the trial during its progress, or that he asked that the trial be temporarily suspended, and the only basis for this assignment of error appears in the motion for a new trial, where it is recited that counsel was excused to attend his wife in an emergency, and that before his return to the court the alleged prejudicial argument had been made, of which he was unaware until after the trial had been completed.

It is not the function of a motion for a new trial to bring such matters into the record. A similar question arose in the case of *Cravens v. State,* 95 Ark. 321, 128 S. W. 1037, where it was assigned as error in the motion for a new trial that the court had erred in not permitting the defendant to offer certain testimony. In holding that this testimony, alleged to have been offered in evidence, could not be considered, Judge HART there said: ''We cannot consider this alleged assignment of error. The bill of exceptions does not show that such testimony was offered to be introduced by the defendant. It is true that such appears to be the case from the motion for new trial, but motions for new trials cannot be used to bring into the record that which does not otherwise appear of record. It is the office of a bill of exceptions to bring upon the record matters which do not appear upon the judgment roll or record proper, and motions for new trials have never been used for that purpose. *Foohs v. Bilby,* 95 Ark. 302, 129 S. W. 1104; *Cox v. Cooley,* 88 Ark. 350, 114 S. W. 929. In the latter case the Court said: 'The motion for new trial cannot be used, and has never been used, to incorporate anything into the record or any exceptions to anything done by the court. Its sole use is to assign errors already committed by the court, except for newly discovered evidence as provided in the sixth paragraph of section 6215, Kirby's Digest.' ''

Trial courts cannot be by-passed in this manner and be deprived of the opportunity of passing upon a question of fact as to what had happened at the trial.

Affidavits of certain jurors, who tried the case, were offered in evidence, these being to the effect that but for the argument of the prosecuting attorney they would not have agreed to a verdict imposing the death sentence, but would have agreed only to a verdict imposing a life sentence. The slight value and the dangerous character of such testimony is shown by the fact that these jurors when examined in open court gave explanations of the conditions under which and the purposes for which they had made the affidavits, which largely destroyed their evidentiary value, had they been admissible. But the policy of the law opposes the admission of the testimony of jurors impeaching their verdict, and this policy is crystalized into a statute reading as follows: "A. juror can not be examined to establish a ground for a new trial, except it be to establish, as a ground for a new trial, that the verdict was made by lot." Section 4060, Pope's Digest.

A number of cases are cited in the note to this section of the statute. In one of these, that of *Jones v. State,* 161 Ark. 242, 255 S. W. 876, it was held that the defendant's counsel might not inquire of the jury if they would have voted for a conviction if the court had given a certain instruction, and in another case, that of *Wallace v. State,* 180 Ark. 627, 22 S. W. 2d 395, that it might not be shown by a juror that the separation of the jury resulted in prejudice to the defendant. And in another of these cases, that of *Post v. State,* 182 Ark. 66, 30 S. W. 2d, 838, that a juror would not be permitted to testify that a verdict was not unanimous.

A later case, that of *Goodnaugh v. State,* 191 Ark. 279, 85 S. W. 2d, 1019, on a motion for a new trial, testimony of jurors that older jurors persuaded younger ones to agree to a verdict by assuring them that the court would suspend the sentence held properly excluded, as

jurors may not impeach their verdict except to show that it was arrived at by lot.

It was assigned as error that the jury had not been kept together as the court had directed should be done, and that a person not a qualified elector of Carroll county, where the trial was had, was placed in charge of one of the jurors, who did not remain with other jurors at night. The jury was composed of eleven men and one woman, and they were all given accommodations for the night on the third, or top floor of a local hotel. The eleven men were assigned to three rooms, and the lady was given another room, which modesty required. But this lady was in the charge of the court reporter, a lady who spent the night with this juror. This lady reporter testified that she was not a qualified elector of Carroll county, but was a qualified elector of Washington county, another county in the same judicial circuit. We know of no law which required that she be a qualified elector. It was shown, however, that she was sworn and admonished as to her duties as required by law, and she testified that no one communicated with the lady juror while she was separated from her fellow jurors.

Other members of the jury were at all times in charge of a regular bailiff who had been sworn and admonished as required by law and who appeared to have been meticulously careful about obeying the admonitions of the court to keep the jury together, and to permit no one to talk with them except that he permitted one juror to give telephone directions to his son about the care of his stock, and except also that he permitted the jury to attend a moving picture show. But it was shown that the bailiff had arranged for the jury to sit together, on a rear row of seats, and that no member of the jury had any conversation with anyone except other members of the jury. We do not give our approval to the action of the bailiff in taking the jury to a moving picture show where some outside contacts were unavoidable, but the affirmative showing was made that the jury was kept together as well

as could be and that the jury was not subjected to any influence impeaching the integrity of the trial.

Finding no error, the judgment must be affirmed and it is so ordered.