BELL *v.* STATE.

4763                                                    265 S. W. 2d 709

Opinion delivered March 15, 1954.

*Harold Sharpe,* for appellant.

*Tom Gentry,* Attorney General and *Thorp Thomas,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. The appellant, Leodis Bell, was convicted of the crime of murder in the first degree and sentenced to life imprisonment; and he prosecutes this appeal.

We have carefully studied the record and find no error except the one unfortunate incident involving a communication between the Trial Judge and the Jury; and that incident necessitates a reversal. After the evidence had been concluded, the instructions given, and the arguments made, the Jury retired to consider its verdict; and while the Jury was thus deliberating, on September 14th, there occurred the incident which is referred to in Assignment No. 5 in the Motion for New Trial, which reads as follows:

"(5) That during the course of the jury's deliberation the Judge of the Court went into the jury room to ask the jurors if they were going to reach a

verdict before the noon hour and while there the Judge was asked by the jury if they gave the defendant life imprisonment would he be able to get out, and the judge of the Court replied that he could not tell them definitely but that normally speaking, through various processes of the Parole Board—commutations of sentences, etc., that life termers usually don't serve over seven or eight years, but that there are instances in which they served the full life term; that this indicates that the jury was trying to determine how long a term it would take to be sure the defendant served seven or eight years in the penitentiary, and that they did not arrive at their verdict on the basis of the fact that the defendant was guilty of first degree murder; that statements of His Honor, the Judge, although not intended to be, were highly prejudicial to the defendant."

The Motion for New Trial was overruled on September 16th, and when the appellant's counsel was before the Court to have the Bill of Exceptions settled on October 5th, the Trial Court dictated a statement which became a part of the Bill of Exceptions, and which statement we now copy in full:

"At the request of counsel for the defendant who will be the appellant in the Supreme Court and who was not counsel at the trial of the case the Court makes the following statement for the record in open court on this, the 5th day of October, in the presence of counsel for the defendant and the prosecuting attorney: "The jury in this case retired to the jury room to consider their verdict between 10:30 and 11:00 o'clock. The Court was recessed while this jury was out and at 12:00 o'clock noon, or a little bit thereafter, I wanted to determine whether the jury would want me to stay over during the noon hour or whether they were going to adjourn their deliberations for lunch. I looked around for the sheriff and he was not in the court room so I walked to the jury room door, which is just off the court room, knocked on the door and opened it. When I opened the door all discussion in the jury room stopped. I did not enter the jury room, but stood at the door with the

door open and asked the foreman of the jury if they wanted me to keep myself available during the noon hour to receive their verdict or did they want to go to lunch themselves. The foreman informed me that they would let me know in a few minutes. I started to leave and one of the jurors asked me if he could ask me a question. I said, 'You may ask a question but I doubt if I can answer it.' He then asked if there was any way a man could get out of serving a life sentence who had been sentenced for life. On the spur of the moment, I answered his question by saying: 'Yes, it does happen that they get out under our present system after having served from seven to ten years.' The same juror then asked 'How do they do it?'; and I said, 'It happens often that they commute the life sentence to twenty-one years after the defendant has served seven years or more and then let him out on parole. As a matter of fact it is my information that the average time served by life termers in Arkansas for the last several years has been seven years, however, it does not always happen and there are those who serve the rest of their lives under this type of sentence.' That was all of the discussion as nearly word for word as I can remember it. I never did go into the jury room and I never did hear any of the jury's discussion, either about adjournment for lunch or about the case. I then returned to the court room and informed counsel for the defendant fully as to what had just occurred.

"No motion for a mistrial was made at the time but this matter was included in the motion for new trial as one of the grounds therefor, was argued and the Court being of the opinion that it was not prejudicial overruled the motion for new trial."

We admire the candor and integrity of character of the Trial Judge, who unhesitatingly made the above and foregoing statement; but we cannot affirm this case and thereby put the stamp of our judicial approval on such communications between the Judge and the Jury, lest in the future such communications should be considered a wise course for other judges to follow. Our

position here is very much like that which confronted us in *Byler* v. *State,* 210 Ark. 790, 197 S. W. 2d 748. In that case it was discovered after the trial—and unknown by the Judge and all parties before the trial—that the Trial Judge was related to the deceased within the fourth degree of affinity. Solely because of such relationship, we reversed the conviction. The late and beloved Mr. Justice Frank G. Smith, speaking for the Court, said:

"It may be asked therefore, what difference it makes that this relationship existed between the presiding judge and the sheriff? The answer is, 'It will be recorded for a precedent and many an error by the same example will rush into the state. It cannot be.' . . .

"It may be unfortunate that the case will have to be retried, but we think it better that a single case should be retried than to approve an improper precedent for the trial of future cases.'"[1]

Likewise, we know it is better for this one case to be retried than for this Court to approve an improper precedent that may be used in the trial of future cases. We are convinced that the Trial Judge committed error, which was not waived; and that the error was prejudicial.

I. *Error.* § 43-2139 Ark. Stats. is § 248 of the Code of Criminal Procedure, and says:

"After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties."

In *Wacaster* v. *State,* 172 Ark. 983, 291 S. W. 85, while the Jury was still considering its verdict, the Trial Judge and the foreman of the Jury had a conversation in the hall outside of the jury room, in the absence of the defendant and his attorney, in which conversation

---

[1] In *Stroope* v. *State,* 72 Ark. 379, 80 S. W. 749, Chief Justice BUNN expressed the same thought as that contained in the quotation.

the Court discussed with the foreman of the Jury the likelihood of a parole. We held that the Statute quoted above was mandatory, and that the conversation between the Trial Judge and the foreman of the Jury was error; and we reversed the conviction. We quoted from *Wawak* v. *State*, 170 Ark. 329, 279 S. W. 997, as follows:

" 'It is, of course, not only improper, but is error calling for the reversal of the judgment, for the Court to communicate with the Jury, in the absence of the defendant, any directions in regard to their verdict.' "

In addition to the cases cited in *Wacaster* v. *State*, *(supra)*, there are many other cases decided by this Court, all discussing this matter of communications between the Court and the Jury, either in the absence of the accused or in any manner except in accordance with § 43-2139 Ark. Stats. Some of these cases are: *Kinnemer* v. *State*, 66 Ark. 206, 49 S. W. 815; *Stroope* v. *State*, 72 Ark. 379, 80 S. W. 749; *Pearson* v. *State*, 119 Ark. 152, 178 S. W. 914; *Scruggs* v. *State*, 131 Ark. 320, 198 S. W. 694; *Hinson* v. *State*, 133 Ark. 149, 201 S. W. 811; *Hopkins* v. *State*, 174 Ark. 391, 295 S. W. 361; *Durham* v. *State*, 179 Ark. 507, 16 S. W. 2d 991; *Day* v. *State*, 185 Ark. 710, 49 S. W. 2d 380; and *Smith* v. *State*, 194 Ark. 264, 106 S. W. 2d 1019. See also Annotations in 22 A. L. R. 261; 34 A. L. R. 104; and 62 A. L. R. 1466. We conclude that the Trial Judge committed error in having the conversation with the Jury as detailed in his statement previously copied herein.

II. *Waiver.* But it is insisted by the Attorney General that any error that might have been committed by the Trial Judge was waived by the defendant and his counsel because the Trial Judge immediately returned to the Court room and informed counsel for the defendant fully as to what had just occurred; and that record contains no objection or exception; and the Trial Judge has dictated into the record that no Motion for Mistrial was made. From these facts, the Attorney General argues that in the absence of an objection or exception, the error cannot be considered; that it was too late to raise the

question for the first time in the Motion for New Trial; and the Attorney General cites in this connection, *Durham* v. *State,* 179 Ark. 507, 16 S. W. 2d 991, and *Davidson* v. *State,* 108 Ark. 191, 158 S. W. 1103. It is true that we have said many times in appeals in criminal cases that error assigned in the Motion for New Trial must be predicated on an objection or exception made at the time the error was committed. This is the rule: but we have recognized an exception[2] to it, particularly in the matter of improper argument. In *Wilson* v. *State,* 126 Ark. 354, 190 S. W. 441, in discussing the absence of any objection to an improper argument, we said:

"Appellant cannot predicate error upon failure of the Court to make a ruling that he did not at the time ask the Court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same."

In the case at bar, we hold that the conversation between the Trial Judge and the Juror falls within the purview of the quoted language above: the Judge, having committed the error, should have corrected it on his own motion, and the accused was not obligated to make a formal objection because the error had already been committed, and an objection could not have erased the damage that had been done. The remarks that the Trial Judge made to the Jury were the same as ink upon snow,[3] and no amount of admonitions or cautions could have erased from the minds of the Jury what the Trial Judge had said.

In some cases the Trial Judge has told the Jury the *law* as to paroles; and that course of procedure has been approved. See *Glover* v. *State,* 211 Ark. 1002, 204 S. W.

---

[2] In *Wells* v. *State,* 193 Ark. 1092, 104 S. W. 2d 451, we held that although there were no objections or exceptions, nevertheless this Court was not precluded from an examination of the record for error. In *Wacaster* v. *State,* (*supra*), the objection was not made until the Motion for New Trial, but in that case the Court did not inform counsel of the conversation, as was done here.

[3] We used this expression in regard to statements of the Prosecuting Attorney to the Jury in *Smith* v. *State,* 205 Ark. 1075, 172 S. W. 2d 248.

2d 373; and *Pendleton* v. *State*, 211 Ark. 1054, 204 S. W. 2d 559.[4] But in the case at bar, the answers made by the Trial Judge to the Juror's questions—admittedly made on the "spur of the moment"—were not declarations of law that a Judge could make from the bench; rather the answers were testimony as to the Judge's personal observations and hearsay evidence as to the length of time some convicts stay incarcerated. The answers would not have been legally admissible into evidence. At best they fall into the same category as improper arguments of counsel to the Jury,[5] and for that reason the quoted language from *Wilson* v. *State, (supra)*, is apropos to the situation here. The defendant did not waive the error because the Trial Judge should, on his own motion, have declared a mistrial because of the answers that he made to the Jury. We are all human, and we know the Trial Judge in this case did "on the spur of the moment" what many of us might have done; but calm reflection convinces us that he should have set the verdict aside when the error was called to his attention in the Motion for New Trial, because it was error that, under the circumstances, was not waived.

III. *Prejudicial.* In the statement which the Trial Court dictated into the record, as previously copied herein, the Trial Judge stated that he denied the new trial because "the Court being of the opinion that it (the error) was not prejudicial." We conclude that the error here involved was prejudicial.[6] The Court had instructed the Jury, not only as to first degree murder, but as to second degree murder, voluntary manslaughter, and self-defense. The defendant had stoutly maintained that if he did not act in self-defense, he certainly acted in the heat of passion. The Jury was still deliberating, when the Court told the Jury that a person sentenced to life im-

---

[4] Other cases that might be cited to point out the difference between the Court telling the Jury the law and telling the Jury the facts on suspended sentence and parole, are: *Pittman* v. *State*, 84 Ark. 292, 105 S. W. 874; *Bird* v. *State*, 154 Ark. 297, 242 S. W. 71; and *Jones* v. *State*, 161 Ark. 242, 255 S. W. 876.

[5] See *Hyde* v. *State*, 212 Ark. 612, 206 S. W. 2d 739.

[6] See 24 C. J. S. 849 for general discussion as to when remarks of trial judge constitute prejudicial error.

prisonment sometimes got out in seven years. That conversation could have caused the Jury to change the grade of the offense from second degree murder and a seven-year sentence to first degree murder with a life sentence. Certainly the communication made by the Trial Judge to the Jury while the deliberations were still in progress did not benefit the defendant; and, on the other hand, prejudiced his rights.

What this Court said about another Trial Judge in *Hinson* v. *State*, 133 Ark. 149, 201 S. W. 811, applies with equal force to the Trial Judge here: ''The high character of the Trial Judge is so well known that it cannot be assumed that he was undertaking to exercise any undue influence over the Jury.'' But, for the error indicated, the judgment is reversed and the cause remanded.

The Chief Justice dissents.

MINOR W. MILLWEE, Justice (concurring). It is a little difficult to determine from the majority opinion whether the circuit judge or the defendant was on trial below. But it is clear that error was committed by the judge in going to the jury room in the manner indicated, and the attorney general has so conceded in his brief. The difficult question is whether the error was waived by appellant's failure to object after the matter was called to his counsel's attention. In reciting what transpired the court stated that counsel for the defendant made no ''motion for a mistrial'' at the time he was informed of the objectionable matters, but the court did not state whether counsel for the defendant objected to the procedure. In these circumstances, I would resolve the doubt in favor of the defendant and indulge the presumption that he did, in fact, object although he did not move for a mistrial. I cannot agree with the majority's conclusion that no objection was necessary. In reaching this conclusion the majority are overruling the case of *Durham* v. *State*, 179 Ark. 507, 16 S. W. 2d 991, without saying so. That case involved the same error committed here and this court in a unanimous opinion written by Chief Justice HART held that the error was waived by failure to

object. We have followed the same rule in numerous other cases, many of them involving the death penalty, in connection with errors which are not objected to. In my opinion the majority do violence to this well-settled rule. I, therefore, concur in the result only.

GRIFFIN SMITH, Chief Justice, dissenting. The material facts are undisputed. Judge Taylor did not enter the jury room, but stood at the door and answered certain questions that every informed person in Arkansas knows to be true. These questions and the responses made by the judge are a composite of constitutional and statutory law: the Governor's power, upon the one hand, to commute sentences, and the parole system upon the other.

Then the judge immediately informed counsel for the defendant regarding the conversation, and there was seeming acquiescence. Certainly a motion for mistrial at this stage of the procedure would have been proper. Instead, the defendant preferred to speculate on what the jury would do. If the verdict proved satisfactory, nothing would be said about the so-called judicial indiscretion; if unsatisfactory, the matter would be urged as error. I do not think that counsel for the defendant had this alternative in mind. They are not the type of lawyers who would conceal such a purpose. It is more than a circumstance that these attorneys do not appear as counsel on appeal. Neither should unethical practice be ascribed to the attorney who now represents the defendant. The record does not show that he participated in the trial. I think the error was waived by conduct and that the judgment should be affirmed.