John I. Purtle, Justice, dissenting. I cannot refrain from expressing my rather strong dissent from the majority in this case, although I am sure the majority of the Court intends to do no real injustice and, no doubt, believe they are upholding the law. They are in fact disregarding the constitutional rights of a citizen of the State of Arkansas and sending him to prison on a failure to comply with a procedural rule of the Supreme Court of Arkansas. They are, in my opinion, straining at a gnat and swallowing a camel. The whole basic system of our Republic is founded upon the equality of all mankind and justice to all, regardless of their station in life or status in society. The Supreme Court of Arkansas promulgated its rules for the purpose of conducting orderly business and guiding the courts and lawyers in the presentation of matters before this Court. Our rules, generally speaking, are good rules and it is proper and right that they should be observed by the courts and the lawyers. However, it is not reasonable to believe that the average person would be able to understand, much less comply with, all of our rules. In fact, we have on many occasions, in the past, waived the technicalities of our rules, especially when a person represented himself. This is the least we could do in this case. The appellant has filed the record and a brief before this Court. Perhaps a more disorganized brief has never been presented to this Court. However, within that brief is a copy of an alleged statement made by the trial judge, to the jury, during their deliberations on this action, which should not and cannot be allowed to stand if our system of justice is to prevail. When the jury asked for additional instructions the court, among other things, allegedly stated: “EVEN IN A CASE LIKE THIS WHERE THERE IS OBVIOUS GUILT A JURY HAS WIDE LATITUDE The above statement was not taken by the court reporter and is “outside” the record so far as the majority is concerned and they even cite a statute and a case to support their position. A hundred statutes and a hundred cases would not change my opinion that we are not doing justice when we fail to look at an error of this magnitude on the ground that it is outside the record. The only reason we have the statement, which is considered outside the record, is that the appellant had the foresight to have his cassette recorder turned on at the time this incident happened. Also contained within the papers filed by the appellant is a sworn affidavit by one of the jurors which states essentially the same thing as the part quoted above. The state, in its reply brief, does not contest the validity of the statement. Therefore, I am assuming it is a true statement. The state argues, in addition to the “outside the record” matter, that no objection was made at the time this remark was made by the court. It is not necessary that an objection be made when an error is so grave as to deprive a defendant of his constitutional rights. In the case of Bell v. State, 223 Ark. 304, 265 S.W. 2d 709 (1954), the trial judge very innocently approached the jury, during deliberations, to determine whether they wanted him to remain at the courthouse during the noon hour. Thereupon a series of questions was asked by jurors and answered by the trial judge. In reversing the conviction in that case, we stated: “We admire the candor and integrity of character of the trial judge, who unhesitatingly made the above and foregoing statement, but we cannot affirm this case and thereby put the stamp of our judicial approval on such communications between the judge and the jury, lest in the future such communications should be considered a wise course for other judges to follow.” No objection was made in the Bell case probably for the reason that the lawyer did not hear the conversation. The same reason exists in the present case. Although the court may have considered he was “having fun” with the jury, it was not so funny to the appellant when he discovered what the fun was all about. I do not mean to imply that the trial judge intentionally made such an unwise statement for the purpose of having this appellant convicted. Nevertheless, it is a statement which a trial court cannot afford to make even though it may be in fun or without any motive whatsoever. This may have been the very statement that caused the jury to return a guilty verdict in a case which was very weak, to say the least, from the beginning. Even though the judge may have been a man of outstanding character and adjudged by the jurors as a great jurist and leader, this is all the more reason why the jury was apt to perceive his every word as a guiding light to them in concluding the matter which was before them. We are dealing with an appellant who states that he has no money and is unable to employ counsel. Therefore, he has no choice but to take on his own defense in the manner in which he believes is suitable in obtaining justice. I would like to quote from page 2-C of the appellant’s brief: “Sutton, naively secure in the knowledge that you can’t be held guilty when you are innocent, was confident of justice. Now sadder but wiser, Mr. Sutton realizes that justice and the sum of one’s available economic resources are rather directly related in at least some circumstances. Specifically, in this case, where an innocent man seeks redress for an error not in the official record, which is a further miscarriage of justice.” New lawyers could have stated the situation more succinctly. I am sure every member of the Court fully agrees that justice is not reserved for only those who can afford to pay for it. I am sure they agree with me that every person in the State of Arkansas is considered to have been born equal with every other individual and has guaranteed unto him the rights not to be deprived of life, liberty or property, without due process of law. The fact that a person cannot hire a lawyer should not send him to prison. I feel we should have waived the formalities of Ark. Stat. Ann. § 27-2127.11 (1962), although it may make our jobs more difficult, in order to see that justice is done in this case and hopefully to prevent such future occurrences. I am sure the trial court, in looking back, would be genuinely sorry for having made such statement if, indeed, it was made. Nevertheless, I feel that, in the interest of justice, the case should be reversed.