## Kenneth JONES *v.* STATE of Arkansas

CR 84-85

675 S.W.2d 825

Supreme Court of Arkansas
Opinion delivered October 1, 1984

*James W. Haddock,* for appellant.

*Steve Clark,* Att'y Gen., by: *Marci Talbot,* Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant Kenneth Jones and Dennis Williams, both aged 19, were jointly charged with burglary and aggravated robbery. They were tried separately. After Williams had been convicted, the appellant Jones was tried, found guilty, and sentenced as an habitual offender to concurrent terms of 30 years for burglary and life for aggravated robbery. There is no merit in the four arguments for reversal.

On May 3, 1983, the victim, Ruby Davis, aged 78, was living with her elderly husband in Dermott. He left home at about 8:00 p.m. on a brief errand. As he backed out of the driveway he saw Dennis Williams and Kenneth Jones using

a public telephone across the street.

After Davis's departure the two young men rang the doorbell and forced their way in when Mrs. Davis opened the door. Kenneth brutally attacked Mrs. Davis, demanding to know where her money was, while Dennis ransacked the house and found about $390. Mrs. Davis suffered a fractured skull, a brain injury paralyzing her left leg, a broken nose, an injured eye, and head injuries. She was hospitalized for a month and used a wheel chair after that. At the trial she identified Kenneth as her attacker.

Dennis was tried first and elected to testify at his trial. He said he and Kenneth had entered the house together. Kenneth grabbed Mrs. Davis, but Dennis ran to the back of the house, found the money, and fled. He said he did not see Kenneth hit Mrs. Davis and did not know until later that she had been hurt.

In the present case the State called Dennis as a witness, but in effect he refused to testify against Kenneth, saying he did not want to talk about the occurrence and was trying to forget it. From the record:

Q. Now who helped you [commit the crime]?

A. I'm through with that. I don't want to talk about it no more.

Q. You don't want to talk about it. You've talked about it before, haven't you?

A. That's right.

Q. You all of a sudden have a loss of memory?

A. You could say that.

In view of Dennis's refusal to testify, the trial court permitted the State to introduce the record of his earlier testimony.

Before passing upon an objection raised during the

selection of the jury, we will consider the appellant's argument that the record of Dennis's prior testimony was not admissible. That may have been true before our legislature adopted the Uniform Rules of Evidence, but such prior sworn statements are now admissible as substantive evidence in criminal cases. Ark. Stat. Ann. § 28-1001, Rule 801(d)(1)(i) (Repl. 1979). The Rule requires that the declarant be subject to cross-examination at the later trial, as Dennis was, and that his testimony be inconsistent with his earlier testimony.

The appellant argues that since Dennis professed to be unable to remember Kenneth's part in the crime, that disclaimer was not "inconsistent" with his former testimony. Such an argument has been rejected repeatedly with respect to the identical federal rule, from which our rule was copied. We agree with this typical statement of the view taken by the federal courts:

> The trial court has considerable discretion in determining whether testimony is "inconsistent" with prior statements; inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position.

*United States* v. *Russell,* 712 F. 2d 1256 (8th Cir. 1983). To much the same effect is this language from *United States* v. *Distler,* 671 F. 2d 954 (6th Cir. 1981):

> Thus, when a witness remembers events incompletely, or with some equivocation at trial, it is not improper to admit a prior statement that otherwise complies with the limitations of Rule 801(d)(1). . . . Determinations such as these are properly left to the discretion of the trial court, and that discretion was not abused here.

Perhaps it is true, as Weinstein suggests, that the prior testimony might not be admissible if the witness had suffered amnesia and genuinely could not remember the original occurrence. *Weinstein's Evidence,* § 801(d)(1)(A)

[04] (1981). On the record in this case, however, the basic rule controls. The trial court did not abuse its discretion in permitting the use of Dennis's prior testimony.

Second, the prosecutor's expectation of using Dennis's earlier testimony had led to a defense objection during the selection of the jury. On voir dire the prosecutor explained to several veniremen that Dennis Williams had been convicted of the same crime, that Dennis had testified at his own trial, and that the prosecutor did not know what his testimony as a witness for the State would be; it might differ from his original testimony. The prosecutor, stating that he did not want the jury to hold the prior conviction against Kenneth Jones, asked if the veniremen could weigh Dennis's two statements, if conflicting, and give his testimony the credibility they thought it deserved. Defense counsel asked for a mistrial on the ground that the jury should not have been told that Dennis had been *convicted* as an accomplice to the crime on trial. That particular objection is not argued on appeal, but it is insisted that a mistrial should have been declared because the jury was "saturated" with references to the possibility that the accomplice's testimony might not be the same. Counsel argue that it is "absolute error" to allow the State to inquire about evidentiary matters during the voir dire. No supporting authority is cited.

The trial judge has wide discretion in controlling the questions to be asked on voir dire. See *Finch* v. *State,* 262 Ark. 313, 556 S.W.2d 434 (1977). That is necessarily the rule, for the range of permissible inquiries and the diversity of legitimate questions are so great as to make it impossible to lay down rigid rules governing counsel's examination of jurors. Relevancy and good faith are surely essential, but we do not perceive the absence of either in this case.

As to the relevancy, the voir dire is not limited to matters that might disqualify the juror, but also is to enable counsel to decide whether a peremptory challenge should be used. *Cochran* v. *State,* 256 Ark. 99, 505 S.W.2d 520 (1974). Here the prosecutor explained that he wanted to know whether a juror might "block out" the prior testimony because Dennis was a convicted felon. The prosecutor did not seek any

commitment from the jurors except that they weigh the accomplice's possibly conflicting testimony to determine its credibility. As to good faith, there is no indication whatever of bad faith. To the contrary, the prosecutor stated that Dennis's being a convicted felon would come out on the witness stand (as it did), and "I'm not asking you in any way to hold that against this defendant, because he deserves a trial of his own by his own jury." We find no abuse of the trial judge's discretion in controllling the voir dire nor any indication that the jury was prejudiced by learning in advance a fact that was repeated again and again during the State's case: that Dennis and Kenneth committed the crime together.

Third, it is argued that the sheriff should not have been allowed to testify that Dennis had told him that he had been at Rose's Place in Dermott at about 10:00 p.m. on the night in question, had gone to a gambling house for 15 minutes, and had ridden to McGehee with Rob Plumer. The testimony was certainly hearsay, but it was also of no importance. Kenneth's defense, supported by his witnesses, was that he had been with several other persons either in Dermott or in McGehee from about 7:30 to midnight and could not have committed the crime in Dermott at eight o'clock. The challenged hearsay did not contradict that defense nor prove anything relevant. We do not see how it could have been prejudicial, nor does counsel point out any possible prejudicial effect.

Fourth. The trial was bifurcated, Kenneth having been charged as an habitual offender with two prior convictions. After the first stage of the trial resulted in verdicts of guilty, proceedings were had in chambers for a determination of the prior convictions. Since the enactment of Act 252 of 1981, that determination, at least when the evidence is undisputed, is to be made by the trial judge out of the hearing of the jury. Ark. Stat. Ann. § 41-1005 (Supp. 1983); AMI Criminal 7000 (1982).

When the court is to determine previous convictions, a duly certified copy of a record of a previous conviction is sufficient proof. § 41-1003. That proof was introduced in

chambers in this case, in the form of certified copies of judgments showing that Kenneth Jones had pleaded guilty to theft of property in 1980 and to burglary in 1981. Those judgments were examined by the trial judge, were marked as exhibits, and are in the record. The proceedings were then resumed in open court, where the judge used AMCI 7001-A to inform the jury of the two convictions and submit the matter of punishment to the jury.

It is quite apparent that defense counsel did not understand the in-chambers procedure mandated by Act 252, for after the jury retired he put his objections into the record in language we quote in part:

There's been no introduction of evidence as to prior convictions, and that the Judge unduly commented on the evidence without the documents being entered into evidence, and for these reasons we object [to his being] sentenced under the specific statute in addition to our objection awhile ago, state that no prior conviction properly proves that the jury properly considered it. . . . Notice that this is in chambers, and you don't introduce evidence in chambers, you introduce evidence for the jury to [see]. . . . If they had attempted to introduce the evidence in the courtroom as properly required instead of out in the back room, the proper objection would have been made. You don't introduce evidence for the jury in the back room. You introduce it in the courtroom, for them to look at it.

On this fourth point counsel's brief, as we understand it, makes essentially two arguments. First, it is contended that the court did not have the hearing contemplated by Section 41-1005 (2), because the certified copies of the judgments were not formally introduced in evidence. The copies, however, were regular on their face, were examined by the court, were marked as exhibits, were placed in the record, and were the basis for the court's instruction to the jury in the language of AMCI 7001-A, submitting the enhanced ranges of punishment. If this was not a literal compliance with the requirements, and we think it was, it was certainly a substantial compliance. Nothing essential

was omitted.

Second, it is contended that the defendant was not given an opportunity to controvert the evidence of previous convictions, a right recognized by Section 41-1005 (2). Counsel, however, was present during the entire proceeding in chambers and had the opportunity to offer whatever evidence he had. That he did not offer any was not due to any action by the judge but rather to counsel's mistaken belief that an additional hearing had to be held in open court. Finally, an insuperable flaw in this contention is counsel's failure to make any proffer of the proof that he supposedly wanted to introduce. Absent such a proffer, we cannot send the case back for a new trial that might prove wholly unnecessary for want of any competent evidence to rebut the prima facie proof of previous convictions. The proffer is vital.

Pursuant to the statute and rules governing appeals from a sentence of life imprisonment, we have examined the record and find no prejudicial error to which an objection was made.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. How far must we go before we adopt the plain error rule beyond *Coones* v. *State,* 280 Ark. 321, 657 S.W.2d 553 (1983); *Barnum* v. *State,* 276 Ark. 477, 637 S.W.2d 534 (1982); *Singleton* v. *State,* 274 Ark. 126, 623 S.W.2d 180 (1981); *Wilson & Dancy* v. *State,* 261 Ark. 820, 552 S.W.2d 223 (1977); *Sims* v. *State,* 258 Ark. 940, 530 S.W.2d 182 (1975); and *Bell* v. *State,* 223 Ark. 304, 265 S.W.2d 709 (1954)? Precedent or not there comes a time when this court should step in and correct prejudicial errors even though not technically raised at the trial level. In my opinion the jury was "conviction qualified" when the trial court allowed the state to question them about a convicted accomplice whose testimony was apt to change when he took the stand. As it turned out the accomplice did "not remember" his prior testimony. His prior testimony was

properly introduced during the trial. The state should have been limited to arguing the credibility of the witness after the matter arose during the course of the trial. This decision may well give the idea that it is permissible to set up a straw man and knock him down in the presence of the entire jury panel. Suppose the accomplice had testified the same at the present trial as he did at the first. The jury would still have had before it improper evidence that an accomplice had confessed for the appellant and that the accomplice had been convicted for a lesser role than appellant's role in the crime.

The majority opinion could lead to all sorts of matters being presented on voir dire. For example the panel could be asked if they would believe a witness who would testify that the accused did in fact commit the crime for which he was being tried. It takes neither precedent nor imagination to understand the prejudice which could result from unbridled voir dire by the prosecution. "Death qualified" juries are bad enough but this court now goes one step further and allows "conviction qualified" juries. There is no valid reason why the state should not have been required to wait until the accomplice testified before attacking his credibility. The discretion of the trial judge is not boundless. In the early stages of the trial it would not have been too costly or time consuming to grant a mistrial.

I would reverse and remand for a new trial.