SLIP OPINION

Cite as 2015 Ark. 271

# SUPREME COURT OF ARKANSAS

No. CR–13–438

| | |
|---|---|
| EDWARD THOMPSON III<br>APPELLANT | **Opinion Delivered** June 18, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-12-749] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BARRY SIMS, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Edward Thompson III appeals his convictions and sentences for one count each of first-degree murder, aggravated robbery, felony theft, and misdemeanor theft. He was sentenced, respectively, to life imprisonment, fifty years' imprisonment, and forty years' imprisonment in the Arkansas Department of Correction, to be served concurrently to a term of one year in the county jail. Thompson raises two arguments on appeal: (1) that the circuit court erred in denying his motion to suppress identification and (2) that the circuit court erred in failing to conduct a hearing following an ex parte communication with a juror. Because Thompson was sentenced to life imprisonment, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2014). We affirm in part and reverse and remand in part.

Because Thompson does not challenge the sufficiency of the evidence against him, a brief recitation of the facts will suffice. During the early morning hours of December 24, 2011, brothers Tyler Ratley and Keye Ratley were leaving the Triniti Nightclub in Little

Rock. Tyler, who was a short distance behind Keye, was attacked by two assailants who attempted to rob him. When Keye realized his brother was in trouble he ran to help, and the assailants began to flee. As Keye chased after the men, one of them turned around and fired a shot from a handgun. The bullet struck Keye in the stomach and he later died.

In the course of investigating the murder and robbery, Little Rock police learned of a possible connection between those two crimes and the theft of a car from a nearby neighborhood. Through this connection, police developed Thompson as a suspect in the robbery and murder. Thompson was later arrested after Tyler, while looking at a photographic lineup, identified Thompson as one of the men who had killed his brother.

Thompson was charged by felony information with one count each of capital-felony murder, aggravated robbery, possession of a firearm by certain persons, theft of property, and theft by receiving. Thompson moved to sever the firearm charge, and the court granted that motion. Immediately prior to trial, the State announced that, while it was not amending the information, it was going to proceed with a misdemeanor count of theft in lieu of the felony theft-by-receiving charge.

The case proceeded to trial and, following the presentation of evidence, the jury was instructed on capital-felony murder, first-degree-felony murder, aggravated robbery and its lesser-included offense of robbery, as well as theft. Thompson was convicted and sentenced as set forth above. A timely record was lodged in this court, and counsel was appointed to represent Thompson. Thompson's counsel then filed a motion to withdraw and a brief asserting that there were no meritorious issues for an appeal pursuant to *Anders v. California*,

386 U.S. 738 (1967). Because counsel failed to comply with the requirements of *Anders* and Arkansas Supreme Court Rule 4–3(k), despite several rebriefing orders, this court removed him and appointed new counsel, *see Thompson v. State*, 2014 Ark. 435 (per curiam), who has filed the instant appeal raising the aforementioned points.

As his first point on appeal, Thompson argues that the circuit court erred in denying his motion to suppress an out-of-court identification made pursuant to a photographic lineup. Thompson argues that the photographic lineup was unduly suggestive because the witness was shown two different lineups, and Thompson was the only person whose photo appeared in both of those lineups. In advancing this argument, Thompson acknowledges that there is a question whether this issue is preserved for appellate review, but concludes that this court may consider his argument on his appeal pursuant to the fourth exception in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The State counters that this argument is not preserved for review because Thompson failed to object to the witness's in-court identification of him and that the *Wicks* exception does not apply.

As a general rule, an appellant has the burden to prove that a pretrial identification was suspect. *Hayes v. State*, 311 Ark. 645, 846 S.W.2d 182 (1993). Even if a photographic lineup process is suggestive, the trial court may determine that, under the totality of the circumstances, the identification was sufficiently reliable. *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002). This court will not reverse a trial court's ruling on the admissibility of an identification unless it is clearly erroneous. *Chism v. State*, 312 Ark. 559, 853 S.W.2d 255 (1993). Nevertheless, an objection to a pretrial photographic identification is not preserved

SLIP OPINION

unless there is a contemporaneous objection to the witness's in-court identification at trial. *Id*.

The identification at issue in the instant case was made by Tyler, who identified Thompson as one of the men who had attacked him and shot his brother. Almost a month after the robbery and murder, police asked Tyler to review a photographic lineup to see if he could identify any of the assailants. After reviewing the photographs, Tyler was unable to identify the assailant. About an hour after he left the police station, an officer called Tyler and asked if he could come back and look at a second photographic lineup. In this second lineup, the officer included a picture that more closely resembled Thompson at the time of the crimes. This time Tyler identified Thompson as one of the men who had attacked him and shot his brother outside the nightclub.

Prior to trial, Thompson challenged the admissibility of the out-of-court photographic identification made by Tyler, arguing that it violated the Fourteenth Amendment to the United States Constitution because it was unduly suggestive and lacked reliability. He asked that both the out-of-court identification and any in-court identification be suppressed, but the circuit court denied the motion. Thompson renewed his motion to suppress just prior to the beginning of the trial, and the circuit court again denied it. But, during the trial, Thompson did not object when the State introduced the photographic lineup, nor did he object when Tyler made an in-court identification.

In *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510, this court held that a challenge to an out-of-court photographic identification was not preserved for review when, despite

challenging the photo identification prior to trial, the appellant failed to object to the victim's in-court identification. *See also Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006). In *Ellis*, as here, the defendant made a motion to suppress the photo identification, which was denied during a pretrial hearing. However, because Ellis did not object to the in-court identification at trial, this court found that the argument was procedurally barred. *Id*. Accordingly, Thompson, like the appellants in *Sweet* and *Ellis*, failed to preserve this argument for appeal.

Before leaving this point, it must be noted that Thompson argues that if his failure to object to the in-court identification impacts his argument on appeal, then this court should still address the merits of his argument under the fourth exception set forth in *Wicks*, 270 Ark. 781, 606 S.W.2d 366. In *Wicks*, this court noted that some jurisdictions, particularly the federal courts, conduct plain-error review, but held that in Arkansas an argument for reversal will not be considered in the absence of an appropriate objection. However, the *Wicks* court recognized four exceptions to the basic requirement of an objection in the trial court, noting that they were "so rare that they may be reviewed quickly." *Id*. at 785, 606 S.W.2d at 369. The fourth exception, now relied on by Thompson, was explained as follows:

> A fourth possible exception might arguably be asserted on the basis of Uniform Evidence Rule 103(d): "Nothing in this rule precludes taking notice of errors affecting substantial rights although they were not brought to the attention of the court." Ark. Stat. Ann. § 28-1001 (Repl. 1979) [now Ark. R. Evid. 103(d)]. That statement, however, is negative, not imposing an affirmative duty, and at most applies only to a ruling which admits or excludes evidence.

*Id*. at 787, 606 S.W.2d at 370.

Although this issue involves the review of an evidentiary decision, we decline to apply the fourth *Wicks* exception based on the facts of this case. This court has refused to expand the narrowly defined exceptions outlined in *Wicks* when an appellant simply failed to make a proper, contemporaneous objection at trial. *See Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998). Here, Thompson objected to the photographic lineup prior to trial but did not renew that objection at trial. Nor did he object to the in-court identification. There is no reason that he could not have objected at trial and his failure to do so simply does not warrant this court applying the narrow *Wicks* exception.

Thompson's second point on appeal is that the circuit court erred in failing to conduct a hearing following an ex parte communication with a juror. In this vein, Thompson, citing to the Supreme Court's decision in *Rushen v. Spain*, 464 U.S. 114 (1983), asserts that the circuit court should have disclosed the communication to counsel, and when the court failed to do so, it should have held a hearing to determine any prejudicial effect of failing to disclose the communication. Without any citation to authority, Thompson asserts that "[b]ecause any constitutional effects of this ex parte communication were not mitigated through a post–trial hearing, the Appellant's convictions should be reversed." Again, recognizing that there was no objection made below, Thompson asserts that this court should nonetheless address this argument because the second *Wicks* exception applies.

The State counters that this issue is not preserved for review because Thompson never objected to the ex parte communication. Moreover, the State asserts that it is not clear from the record whether Thompson and his attorney were present when the communication

SLIP OPINION

between the circuit judge and the juror took place and that it is Thompson's burden to bring forth a record that demonstrates error.

The ex parte communication referenced by Thompson arose as follows. At the close of evidence, the circuit judge announced that he was recessing court for the day. He reminded jurors not to discuss the case and confirmed with the attorneys the start time for the next day. The record then reflects the following:

> PROSPECTIVE JUROR TWELVE: Your Honor, can I approach? I just need to ask a question about it. No?

> THE COURT: No. Is it, well, hold on. Wait, don't go anywhere. Everybody else leave. You-all want to approach, him to approach and ask something? Or, I mean, I would just as soon – – if it's something I can answer, I will. How about that?

> PROSPECTIVE JUROR TWELVE: It's something you can answer and they may not need to hear.

> THE COURT: Okay, come up here and just ask me. I'm not going to put it on the record at this time.

> (Judge confers with Juror 12.)

> THE COURT: Okay, that was easy. That's it. Thanks. Okay, see you-all tomorrow.

In one of our rebriefing orders, *see Thompson v. State*, 2014 Ark. 79 (per curiam), we directed appellate counsel to address this issue of a possible ex parte communication, which then prompted counsel to seek a hearing in the circuit court regarding this issue. Thereafter, on May 20, 2014, counsel filed in this court a supplemental record from that hearing. The supplemental record reflects that a juror asked the circuit judge whether jurors could ask witnesses questions, to which the circuit judge responded, "No."

As previously pointed out, Thompson now argues that he is entitled to a reversal of his conviction because of the circuit court's failure to hold a posttrial hearing. As the State points out, however, a posttrial hearing was held and the nature of the exchange between the circuit judge and the jury was stated on the record. It is now clear that the exchange was in no way prejudicial to Thompson. This court noted in *Barritt v. State*, 372 Ark. 395, 400–01, 277 S.W.3d 211, 215 (2008), as follows:

> Both this court and the United States Supreme Court have noted that a "conclusion that an unrecorded ex parte communication between trial judge and juror can never be harmless error ignores [the] day-to-day realities of courtroom life and undermines society's interest in the administration of justice." *Howard v. State*, 367 Ark. 18, 35, 238 S.W.3d 24, 38 (2006) (quoting *Rushen v. Spain*, 464 U.S. 114, 119 (1983)).

In this case, not only was the exchange between the circuit judge and the juror inconsequential, but also Thompson never objected when the circuit judge allowed the juror to approach and ask the question or anytime thereafter. Thompson now argues, however, that this court should consider his argument pursuant to the second *Wicks* exception and cites to this court's decision in *Bell v. State*, 223 Ark. 304, 265 S.W.2d 709 (1954), which was the basis for the second exception announced in *Wicks*, 270 Ark. 781, 606 S.W.3d 366. In *Bell*, the State argued that the appellant had not timely objected after learning that the circuit judge had engaged in such a communication. This court rejected the State's argument and explained as follows:

> It is true that we have said many times in appeals in criminal cases that error assigned in the Motion for New Trial must be predicated on an objection or exception made at the time the error was committed. This is the rule: but we have recognized an exception to it, particularly in the matter of improper argument. In *Wilson v. State*,

126 Ark. 354, [359,] 190 S.W. 441, 443 [1916], in discussing the absence of any objection to an improper argument, we said:

'Appellant cannot predicate error upon failure of the court to make a ruling that he did not at the time ask the court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same.'

In the case at bar, we hold that the conversation between the Trial Judge and the juror falls within the purview of the quoted language above: the Judge, having committed the error, should have corrected it on his own motion, and the accused was not obligated to make a formal objection because the error had already been committed, and an objection could not have erased the damage that had been done. The remarks that the Trial Judge made to the jury were the same as ink upon snow, and no amount of admonitions or cautions could have erased from the minds of the jury what the Trial Judge had said.

*Id.* at 310, 265 S.W.2d at 712 (footnotes omitted). The court in *Bell* ultimately concluded that the error was prejudicial and warranted a reversal of the appellant's conviction.

The instant case is simply not controlled by this court's decision in *Bell*. In the *Bell* case, the circuit judge entered the jury room during deliberations to ask the jury if they were going to reach a verdict before a certain time and then answered juror questions about possible sentencing implications. The communication in this case in no way rises to the level of the exchange in *Bell*. We simply do not have a record before us that demonstrates prejudice or warrants reversal of Thompson's conviction.

Arkansas Supreme Court Rule 4–3(i) (2014) requires this court to review the record for all errors prejudicial to an appellant in all cases when the sentence is death or life imprisonment. Pursuant to that review, we have discovered an error that occurred during

sentencing. The record reflects that at the close of the case, the circuit court instructed the jury, in relevant part, as follows:

### REQUESTED INSTRUCTION NO. 13, AMCI 2d 1001

Edward Lee Thompson III is charged with the offense of capital murder. To sustain this charge, the State must prove beyond a reasonable doubt:
First: That Edward Lee Thompson III, acting alone or with one or more other persons, committed the crime of aggravated robbery; and
Second: That in the course and in furtherance of that crime, or in immediate flight therefrom, Edward Lee Thompson III, or a person acting with him, caused the death of Keye Richard Ratley under circumstances manifesting extreme indifference to the value of human life.

### REQUESTED INSTRUCTION NO. 14, AMCI 2d 1001-A

As part of the charge of capital murder, the State contends that the death of Keye Richard Ratley occurred during the commission or attempted commission of the crime of aggravated robbery. To prove aggravated robbery, the State must prove beyond a reasonable doubt:
First: That with the purpose of committing a theft, Edward Lee Thompson III, or an accomplice, employed or threatened to immediately employ physical force upon another; and
Second: That Edward Lee Thompson III, or an accomplice, was armed with a deadly weapon or represented by words or conduct that he was armed with a deadly weapon.
If the crime of aggravated robbery is not proved to have been committed or attempted by Edward Lee Thompson III, he is not guilty of capital murder.

### REQUESTED INSTRUCTION NO. 15, AMCI 2d 301

Edward Lee Thompson III is charged with capital murder. This charge includes the lesser offense of murder in the first degree. You may find the defendant guilty of one of these offenses or you may acquit him outright.
If you have a reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of the lesser offense. If you have a reasonable doubt as to the defendant's guilt of both offenses, you must find him not guilty.

### REQUESTED INSTRUCTION NO. 16, AMCI 2d 302

If you have a reasonable doubt of the defendant's guilt on the charge of capital murder, you will then consider the charge of murder in the first degree.

## REQUESTED INSTRUCTION NO. 17, AMCI 2d 1002

To sustain the charge of murder in the first degree, the State must prove beyond a reasonable doubt:

First: That Edward Lee Thompson III, acting alone or with one or more other persons, committed the crime of robbery; and

Second: That in the course and in furtherance of that crime or attempt or in immediate flight therefrom, Edward Lee Thompson or a person acting with him, caused the death of Keye Richard Ratley under circumstances manifesting extreme indifference to the value of human life.

## REQUESTED INSTRUCTION NO. 18, AMCI 2d 1002–A

As part of the charge of murder in the first degree, the State contends that the death of Keye Richard Ratley occurred during the commission or attempted commission of the crime of robbery. To prove robbery, the State must prove beyond a reasonable doubt:

That with the purpose of committing a theft, Edward Lee Thompson III, or an accomplice, employed or threatened to immediately employ physical force upon another.

If the crime of robbery is not proved to have been committed or attempted by Edward Lee Thompson III, he is not guilty of murder in the first degree.

## REQUESTED INSTRUCTION NO. 20, AMCI 2d 1201

Edward Lee Thompson III is charged with the offense of aggravated robbery of Tyler Ratley. To sustain this charge, the State must prove the following things beyond a reasonable doubt:

First: That with the purpose of committing a theft, Edward Lee Thompson III, or an accomplice, employed or threatened to immediately employ physical force upon Tyler Ratley, and

Second: That Edward Lee Thompson III, or an accomplice, was armed with a deadly weapon or represented by words or conduct that he was armed with a deadly weapon.

SLIP OPINION

REQUESTED INSTRUCTION NO. 22, AMCI 2d 301

> Edward Lee Thompson III is charged with aggravated robbery. This charge includes the lesser offense of robbery. You may find the defendant guilty of one of these offenses or you may acquit him outright.
> If you have a reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of the lesser offense. If you have a reasonable doubt as to the defendant's guilt of both offenses, you must find him not guilty.

Thus, the jury was instructed that in order to convict on the charge of capital-felony murder, the State was required to prove that Thompson committed the underlying felony of aggravated robbery. But, the jury was also instructed on the lesser-included offense of first-degree murder, which required the State to prove that Thompson committed the underlying felony of robbery. The court also instructed the jury on the charge of aggravated robbery, its lesser-included offense of robbery, as well as on the two theft charges. Additionally, the State sought firearm enhancements on both the murder and the robbery, and the jury was so instructed.

Following jury deliberations, the circuit court read the jury verdicts aloud. The jury found Thompson not guilty of capital murder but guilty of first-degree murder. However, the jury found that the State had not proved that Appellant employed a firearm as a means of committing the murder. The circuit court then announced that the jury had found Thompson guilty of aggravated robbery but not guilty of using a firearm to commit the aggravated robbery. The following then occurred:

> THE COURT: (Reading) We, the Jury, find Edward Lee Thompson III guilty of robbery. I don't actually need this one. This is a lesser of the aggravated robbery. So I'll just consider this moot. Is that okay with the attorneys?

[DEFENSE COUNSEL]: Your Honor, may I approach?

THE COURT: You-all approach.

[DEFENSE COUNSEL]: Your Honor, I guess I would argue that it should be robbery and not aggravated robbery since the lesser – since murder one says robbery is the underlying part of that charge is robbery, not aggravated robbery.

[THE STATE]: Guilty of aggravated robbery as to Tyler, but not guilty of the capital. So I am going to ask for the murder first and the aggravated robbery conviction.

THE COURT: Okay. . . . I'm going to find that they found him guilty of aggravated robbery and that this jury verdict on plain robbery is moot and unnecessary.

[DEFENSE COUNSEL]: Can I just make one more argument, Your Honor? Just for the record that I would argue that they found him guilty of robbery and that's the underlying felony and therefore he should not be found guilty of the aggravated robbery because of the fact that they – it corresponds with the murder charge.

THE COURT: Okay, thank you.

This colloquy demonstrates that what trial counsel actually argued was that the State could not convict Thompson on the charge of aggravated robbery, when it was the underlying felony for capital murder, the charge the jury acquitted on. Thompson's trial counsel further argued that the felony corresponded to the murder charge, and because the jury found Thompson guilty of first-degree murder, the underlying felony for which he could also be convicted was robbery.

We find this argument to be meritorious. It is well settled under our sentencing statutes that a person charged with felony murder, either capital or first degree, may be convicted of, and sentenced for, both the murder and the underlying felony. *See* Ark. Code Ann. § 5-1-110(d)(1)(A), (C) (Repl. 2013). Those provisions state as follows:

SLIP OPINION

(d)(1) Notwithstanding any provision of law to the contrary, a separate conviction and sentence are authorized for:

(A) Capital murder, § 5-10-101, and any felony utilized as an underlying felony for the capital murder;

. . .

(C) Murder in the first degree, § 5-10-102, and any felony utilized as an underlying felony for the murder in the first degree.

This court has recognized that circuit courts have specific authority to sentence a defendant for the underlying felony supporting a capital-murder charge, as well as the felony of capital murder itself. *Jackson v. State*, 2013 Ark. 19 (per curiam); *see also Clark v. State*, 373 Ark. 161, 282 S.W.3d 801 (2008). The same would apply to a charge of first-degree-felony murder and its underlying felony. Here, the underlying felony for the first-degree murder charge was robbery. Thus, it is proper for the circuit court to sentence Thompson on the first-degree murder conviction and its underlying felony of robbery, and we reverse and remand for the circuit court to correct the sentence imposed for aggravated robbery.

No other reversible error has been found pursuant to our Rule 4-3(i) review.

Affirmed in part; reversed and remanded in part.

BAKER and GOODSON, JJ., concur.

*Benca & Benca*, by: *Patrick J. Benca*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.